Hubert WILEY, Appellant,

v.

H.H. BERTELSEN, M.D. and A.M. Guderian, M.D., Appellees.

No. 9704.

Court of Appeals of Texas, Texarkana.

May 2, 1989.

Edward E. Ellis, Ellis & Clark, Paris, for appellant.

James R. Rodgers, Paris, for appellees.

GRANT, Justice.

Hubert Wiley appeals the granting of a summary judgment to H.H. Bertelsen and A.M. Guderian.

In 1980, Bertelsen and Guderian purchased the Seven Mill Iron Ranch located in Hopkins County (1,000 acres) and Red River County (996 acres). Bertelsen and Guderian hired Wiley to be the ranch manager at a salary of $1,300 per month. They terminated Wiley in 1985 and instituted an action against him for conversion of farm equipment. Wiley contends that he was wrongfully terminated and counterclaimed that there was an oral contract between him and his employers which provided that he was to receive one third of the proceeds from the ranch and cattle, less their purchase price, when they were sold. The suit by Bertelsen and Guderian against Wiley for conversion of the farm equipment was severed from Wiley's counterclaim.

Wiley brings one point of error on appeal in which he contends that the trial court erred in granting the summary judgment.

The movant in a summary judgment proceeding has the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. In deciding whether there is a disputed fact issue precluding a summary judgment, evidence favorable to the nonmovant will be taken as true. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in the nonmovant's favor. *Wilcox v. St. Mary's University of San Antonio*, 531 S.W.2d 589 (Tex.1975); Tex.R.Civ.P. 166a. The question on appeal is whether summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the nonmovant's cause of action. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827, 828 (Tex. 1970).

Bertelsen and Guderian attached their affidavits to the motion for summary judgment. They swear that their partnership hired Hubert Wiley on the basis of his pay being $1,300 per month for managing the ranch and that his pay was to increase to $1,600 per month for the second year of his work. They further swear that Wiley was never brought into the partnership, that they never contracted or conveyed any interest in the ranch or cattle to him, that they never promised him that he would receive any share of the proceeds of the sale of the ranch or cattle, that his entire compensation for his services was to be a salary, and that they never promised or implied that Wiley would receive any portion of the ranch. They did state in their affidavits that when Wiley was hired, they did mention to him that if the ranch proved profitable and if he performed his job well, they might in the future enter into some sort of partnership with him on the cattle, but they further swear that the ranch had not proved profitable and that Wiley had performed his job poorly.

In answer to the motion for summary judgment, Wiley filed a response supported by his affidavit in which he stated that he entered into an agreement with H.H. Bertelsen and A.M. Guderian for the purpose of operating a cattle ranch in Red River County and later in Hopkins County. Under the terms of this agreement, according to Wiley, Bertelsen and Guderian were to provide the initial investment for the purchase of the land in these two counties, as well as the equipment and the cattle. In exchange, Wiley was to oversee the day-to-day operations of the ranch and would receive monthly compensation for this management. Also in exchange for his devoting full time to overseeing the operations of the ranch, he was to receive one

third of the value of the land at the time of its sale, less its purchase price, and one third of the value of the cattle, less their purchase price, at the time of their sale.

In addition to Wiley's affidavit, the depositions of the parties were made part of the summary judgment record. In Wiley's deposition, he explains the basis for his conclusion that he had an agreement with Bertelsen and Guderian. Pertinent portions of Wiley's deposition are as follows:

Q. Was there any discussion about you working on this place?

A. Yes, sir.

Q. What arrangement was made between you and the doctors?

A. The doctors, they arranged for me to manage a place for them plus a salary and when the place was dispersed of, the cattle and the place, is what it was, we talked about a ten year, maybe.

Q. What do you mean by that?

A. Being dispersed of, you know, if economics turned around. The economy system had gotten a little poor at that time and it's got worse since. Disperse of it. It would be divided up, you know, and have some retirement out of it.

. . . .

Q. Well, can you explain to me exactly what your conversation was that led up to you believing that you owned an interest in this ranching operation?

A. Well, they just said that when we sold it, we would all get to retire.

Q. Did they tell you how much you were going to receive?

A. Not definitely. They just left it like it was going to be a third of it.

Q. They never said a third, though?

A. To my knowledge, they probably did not, but they left that impression.

Q. What created that impression? What did they do to create that impression?

A. They said that we would split it up and we would—how did he word it that day?—it would be split up where we would all retire off of it. Just our talking, we were talking about pretty close to five years ago, and I don't remember every word said.

Bertelsen and Guderian urge that they are entitled to a summary judgment because there is no written contract. They have filed an answer affirmatively pleading that the statute of frauds is applicable because the alleged agreement involved the sale of real estate, could not be performed within one year, and involved goods (the interest in cattle) being sold for more than $500. Tex.Bus. & Com.Code Ann. § 26.01 (Vernon 1987) and § 2.201 (Vernon 1968).

Wiley has not sought title to one-third interest in the land, but only seeks one third of the proceeds, in excess of purchase price, when the land is sold. The statute of frauds does not apply to an agreement to pay a certain sum of money out of the proceeds of a future sale of land. *Berne v. Keith*, 361 S.W.2d 592 (Tex.Civ. App.—Houston [1st Dist.] 1962, writ ref'd n.r.e.).

Section 2.201 of the Uniform Commercial Code is also not applicable, because it requires that a contract for the sale of goods for the price of $500 or more must be in writing. The alleged oral agreement was not for the sale of cattle or other goods; rather, it provided that Wiley was to receive a percentage of the funds from the proceeds of the sale of cattle in return for his services rendered.

The only remaining question concerning the statute of frauds is whether or not the alleged oral agreement was performable within one year. The only indication as to what amount of time Wiley was required to manage the ranches before he would be entitled to one third of the value of the cattle and property above the purchase price was Wiley's deposition testimony in which he made the equivocal statement, "[W]e talked about a ten year, maybe."

If Wiley's contention was that he had to perform his job as manager for ten years before he was entitled to one third of the value, less the purchase price, of the land and cattle, this would violate the provision requiring that the contract be performable within one year in order to avoid the appli-

cation of the statute of frauds. Tex.Bus. & Com.Code Ann. § 26.01(b)(6).

■ Wiley contends that if the contract is covered by the statute of frauds, he has removed that obstacle by his partial performance of services. Partial performance can serve as an exception to the statute of frauds. Wiley has the burden to establish this defense affirmatively. *See Hammonds v. Calhoun Distributing Company*, 584 S.W.2d 473 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.).

■ Performance of an alleged oral agreement in order to remove the agreement from the operation of the statute of frauds, must be unequivocally referable to the agreement and corroborative of the fact that a contract actually was made. *Chevalier v. Lane's, Inc.*, 147 Tex. 106, 213 S.W.2d 530, 6 A.L.R.2d 1045 (1948). What is done must itself supply the key to what is promised. Rendition of services for which a person receives a monthly salary is insufficient to take the alleged agreement out of the statute of frauds because the services were fully explained by the salary without supposing any additional consideration. *Choleva v. Spartan Aviation, Inc.*, 524 S.W.2d 739 (Tex.Civ.App.—Corpus Christi 1975, no writ); *Anderson v. Paschall*, 60 S.W.2d 1087 (Tex.Civ.App.—Fort Worth 1933), *aff'd*, 127 Tex. 251, 91 S.W.2d 1050 (Tex.Comm'n App.1936, opinion adopted). We hold that the services performed by Wiley did not take the alleged agreement out of the operation of the statute of frauds.

■ The only other time element to which Wiley testified was that the sale from which he was to get a percentage of the proceeds was conditioned upon the economy turning around. It is not clear whether this reference was a condition upon which his receipt of the one-third interest was dependent or whether this was the basis for deciding when he would receive the proceeds, less the purchase price. Pursuant to the standard that we must indulge every reasonable inference in favor of the nonmovant, we shall consider this reference to establish a time element which conceivably could be performed within one year, and thus would not be barred by the statute of frauds.

■ We will next look at Bertelsen's and Guderian's contention that the alleged oral agreement lacked sufficient certainty to be an enforceable contract. An alleged agreement which is too vague, indefinite and uncertain is not an enforceable contract, and a contract is not enforceable when the agreement of the parties leaves an essential term for later determination and it is never determined. *Mooney v. Ingram*, 547 S.W.2d 314 (Tex.Civ.App.–Dallas 1977, writ ref'd n.r.e.).

■ Wiley uses the term *agreement* in his affidavit to describe his conclusion of the mutual assent between him and Bertelsen and Guderian. *Agreement* is a broader term than the word *contract*, and an agreement might lack an essential element of a contract. *Black's Law Dictionary* 62 (5th ed. 1979); *see also, Pine v. Gibraltar Savings Association*, 519 S.W.2d 238, 243–44 (Tex.Civ.App.–Houston [1st Dist.] 1974, writ ref'd n.r.e.). Wiley's use of the term *agreement* amounts to no more than a subjective conclusion. Whether or not there was a valid contract must be based upon objective standards of what the party said and did. *Slade v. Phelps*, 446 S.W.2d 931 (Tex.Civ.App.–Tyler 1969, no writ). To determine whether there was a contract, and if so what the terms of the contract were, we look to the communications between the parties and to the acts and circumstances surrounding these communications. These are the facts that are determinative of whether a contract exists. It is not enough that one party thinks that he has made a contract; he must show that the intentions of the parties to make a contract have been expressed in a manner that the court is capable of understanding. *Bendalin v. Delgado*, 406 S.W.2d 897 (Tex. 1966). The terms must be expressed with sufficient certainty so that there will be no reasonable doubt as to what the parties intended or what the court is being called upon to enforce. *Kirkwood and Morgan, Inc. v. Roach*, 360 S.W.2d 173 (Tex.Civ. App.–San Antonio 1962, writ ref'd n.r.e.).

The terms must also be sufficiently certain so that neither party can reasonably misunderstand them. *Moore v. Mohon*, 514 S.W. 2d 508 (Tex.Civ.App.–Waco 1974, no writ).

■ Wiley complains because he has been wrongfully discharged, but the only reference in his allegations and summary judgment proof to a term for his employment is Wiley's deposition testimony: "[W]e talked about a ten year, maybe." As discussed earlier, if Wiley is contending that this contract required ten years to fulfill, then the alleged oral agreement is barred by the statute of limitations. On the other hand, this is the only reference to the amount of time that he is to be employed in order to obtain the one-third value of the cattle and ranch, less the purchase price. There are numerous cases in Texas in which the courts have presumed a reasonable time for the performance of a contract when the express terms of the contract do not provide for the time of the performance. These cases, however, deal with the amount of time in which acts can be performed, projects can be completed, or payments can be made. In the present case, according to Wiley's position, the term of Wiley's employment is the actual quantity of the consideration which Wiley is to provide. He has not promised to make a profit, and if he had, the summary judgment proof is undisputed that the ranch had not been operated profitably and that Wiley had performed his job incompetently. If Wiley is taking the position that the alleged oral agreement did not require that he operate the ranch for ten years,[1] then the alleged oral agreement is not enforceable because there is a lack of mutuality. There is nothing else in the oral agreement that binds Wiley to work for any specified amount of time; therefore, Wiley was in a position to claim that the mere fact of employment entitled him to one third of the proceeds, less the purchase price, from the sale of the land and cattle.

■ The alleged oral contract is also vague as to when the ranch would be sold so that Wiley could receive his portion of the proceeds. Wiley contended that the sale and distribution of the proceeds was to occur when the economy turned around. (He further testified that "[t]he economy had gotten a little poor at that time and it's got worse since.") This provision lacks sufficient certainty to make the alleged oral agreement enforceable as a contract. A contract should be sufficiently definite to enable the court to fix a time when it can be enforced. *Moore v. Dillworth*, 142 Tex. 538, 179 S.W.2d 940 (1944).

■ Wiley assumes that he was to get one third of the proceeds, less the purchase price, from the sale of the land and cattle from the fact that he and two others were involved in the alleged oral contract. He admits that the parties never discussed his receiving a one-third interest. When asked if he was specifically told he would receive this amount, he answered, "[N]o, but that they gave me that impression." This is a term of material consequence, and in order to uphold the alleged oral contract, reasonable certainty is needed.

The terms of the offer and acceptance as set forth by Wiley are equivocal and lack the required specificity to be an enforceable contract.

The judgment of the trial court is affirmed.

---

1. Wiley actually operated the ranch less than five years.