Heather HARRIS and USAA Casualty Insurance Company, Appellants,

v.

Consuelo BALDERAS, Appellee.

No. 04–98–00068–CV.

Court of Appeals of Texas, San Antonio.

June 28, 2000.

Rehearing Overruled Aug. 2, 2000.

John Simpson, Splawn & Simpson, Lubbock, Ruth G. Malinas, Barry A. McClenahan, Ball & Weed, P.C., W. Wendell Hall, Renee Forinash McElhaney, Fulbright & Jaworski, L.L.P., Mary J. Ibarra, Usaa, Thomas H. Crofts, Jr., Ellen B. Mitchell, Crofts, Callaway & Jefferson, P.C., San Antonio, for appellants.

Dan Pozza, Timothy Patton, Timothy Patton, P.C., San Antonio, William J. Tin-

ning, Law Office of William J. Tinning, Portland, for appellee.

Sitting: TOM RICKHOFF, Justice, ALMA L. LOPEZ, Justice, PAUL W. GREEN, Justice.

## OPINION

Opinion by: TOM RICKHOFF, Justice.

A car driven by Heather Harris collided with a car in which Consuelo Balderas was a passenger. Consuelo suffered severe brain damage as a result of the accident. *See Harris v. Balderas,* 949 S.W.2d 42, 44–45 (Tex.App.—San Antonio 1997, no writ). Consuelo's husband, Octavio, and her daughter, Marta, sustained less severe injuries. Consuelo, Octavio, and Marta filed suit against Harris. Harris filed a counterclaim, contending that Consuelo had agreed to release her from liability for the accident in exchange for $20,000. Harris's counterclaim was severed from Consuelo's personal injury suit. Harris admitted liability in the personal injury suit, and a jury trial on damages was held. The trial court rendered a judgment on the jury's verdict, awarding Consuelo $4,500,821.92, Octavio $337,561.64, and Marta $168,-780.82. This court affirmed. *See id.* at 45.

After the judgment was rendered in the personal injury suit, the parties continued to litigate the existence of the settlement agreement in the severed cause. Consuelo filed a counterclaim, seeking a declaration that there was no settlement agreement, and Harris's insurer, USAA Casualty Insurance Company, intervened on the side of Harris. On cross-motions for summary judgment, the trial court ruled that no settlement agreement existed as a matter of law. Harris and USAA appeal this judgment.

These appeals require us to decide whether the attempt to enforce the purported pre-suit settlement after the entry of judgment in the personal injury suit amounts to a collateral attack on the judgment. We conclude that it does not. We must also decide whether the summary judgment evidence raises a fact issue on the existence of a settlement agreement. We conclude that it does. In accordance with these decisions, we will reverse the summary judgment and remand the cause for trial.

## MOOTNESS

Consuelo initially contended that both Harris's and USAA's appeals are moot. She subsequently abandoned the contention that USAA's appeal is moot. Because the question of mootness relates to our jurisdiction, we will consider whether both appeals are moot. *See Speer v. Presbyterian Children's Home & Serv. Agency,* 847 S.W.2d 227, 229 (Tex.1993).

Harris and USAA are seeking a ruling that they and Consuelo entered into a settlement agreement before the personal injury suit was filed. Consuelo asserts that such a ruling could be used for only one purpose: to avoid paying the judgment in the personal injury suit. Consuelo argues that any attempt to avoid paying the personal injury judgment would be an impermissible collateral attack on that judgment. If the ruling sought by Harris and USAA cannot be used for any permissible purpose, this court's decision in these appeals cannot have any effect on the parties' rights, and the appeals would be moot. *See VE Corp. v. Ernst & Young,* 860 S.W.2d 83, 84 (Tex.1993) (stating that a case is moot when the court's decision on the merits cannot affect the parties' rights).

We have defined "collateral attack" as "an attempt to impeach a judgment offered as evidence of some right," *Jefferson Sav. & Loan Ass'n v. Adams,* 802 S.W.2d 811, 814 (Tex.App.—San Antonio 1990, writ denied), and as " 'an attempt to avoid [a judgment's] binding force in a proceeding not instituted for the purpose of correcting, modifying, or vacating it, but in order to obtain some specific relief against which the judgment stands as a bar'," *Jones v. Jones,* 900 S.W.2d 786, 787–88 (Tex.App.—San Antonio 1995, writ denied) (*quoting Hogan v. City of Tyler,* 602

S.W.2d 555, 558 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.)). A collateral attack is not permissible unless the judgment is void. *See Pursley v. Ussery*, 937 S.W.2d 566, 568 (Tex.App.—San Antonio 1996, no writ). Neither Harris nor USAA contends that the personal injury judgment is void.

### 1. USAA's Appeal

■ The judgment in the personal injury case does not state that USAA is liable to Consuelo for $4.5 million; the judgment reflects only an adjudication of Harris's liability to Consuelo. It is axiomatic that, standing alone, a judgment against an insured in excess of her available insurance coverage does not render her insurer liable for the amount that exceeds the policy's liability limits. To hold an insurer liable for the excess judgment, the insured must establish that the insurer violated some duty to her, such as its *Stowers* duty. *See G.A. Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544 (Tex. Comm'n App.1929, holding approved). Under *Stowers*, an insurer has a duty to settle a third party's claim against the insured when the third party makes a reasonable settlement offer within the policy limits. *See State Farm Lloyds Ins. Co. v. Maldonado*, 963 S.W.2d 38, 41 (Tex.1998). The trial court has ordered that Harris's *Stowers* claim be turned over to Consuelo.[1]

Thus, it is clear that a live controversy exists between Harris and USAA. That controversy turns on the very issue USAA seeks to adjudicate in this case—whether USAA agreed to settle Consuelo's claim against Harris. By adjudicating this issue, USAA is not attempting to avoid the personal injury judgment's binding force. *See Jones*, 900 S.W.2d at 787–88. The judgment does not purport to bind USAA on this issue. Nor is USAA attempting to impeach the personal injury judgment.

*See Adams*, 802 S.W.2d at 814. It is not necessary for USAA to establish any procedural or substantive flaw in the personal injury judgment in order to defeat the *Stowers* claim. *Cf. Rodriquez v. Texas Farmers Ins. Co.*, 903 S.W.2d 499, 511 (Tex.App.—Amarillo 1995, writ denied) (holding that insurer's suit for a declaratory judgment that it had no duty to defend or indemnify its insureds in a suit that had ended in a default judgment against the insureds was not a collateral attack on the default judgment). We therefore conclude that USAA is not attempting a collateral attack and its appeal is not moot.

### 2. Harris's Appeal

■ Unlike USAA, Harris is a party to the personal injury judgment. Consuelo points out that in an action to enforce a judgment, an attempt to challenge the judgment is a collateral attack. *See, e.g., Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex.1994); *Crawford v. McDonald*, 88 Tex. 626, 630, 33 S.W. 325, 327 (1895); *Martin v. Stein*, 649 S.W.2d 342, 345 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.). She therefore argues that Harris cannot rely on the alleged settlement agreement to reduce her obligation to pay the $4.5 million in damages assessed in the personal injury judgment.

We agree that under the personal injury judgment, Harris's liability to Consuelo in tort is fixed. The personal injury judgment does not, however, fix the parties' rights and obligations in contract. If Harris establishes the existence of the settlement agreement in this suit, she can also seek to enforce that contract. The terms of the settlement agreement will govern the outcome of the suit; the validity of the personal injury judgment will be irrelevant to the outcome. Enforcement of the presuit settlement agreement does not consti-

---

1. Consuelo has filed suit against USAA in Brooks County, alleging that USAA breached its *Stowers* duty and seeking a declaration that her claim was not settled before the personal injury suit was filed. USAA has filed suit against Consuelo in Bexar County, seeking a declaration that it settled with Consuelo before the personal injury suit was filed.

tute impeachment or avoidance of the binding personal injury judgment. *See Jones,* 900 S.W.2d at 787–88; *Adams,* 802 S.W.2d at 814; *see also Leon v. Keith,* 733 S.W.2d 372, 374 (Tex.App.—Waco 1987, writ ref'd n.r.e.) (holding that suit for breach of family settlement agreement that was entered into before will was probated was not collateral attack on probate decree). Therefore, Harris is not attempting a collateral attack and her appeal is not moot.

### EXISTENCE OF A CONTRACT

■ All the parties to this suit sought a ruling regarding the existence of a settlement agreement; Consuelo sought a ruling that a settlement agreement does not exist, and Harris and USAA sought a ruling that a settlement agreement does exist. Each side sought summary judgment. The parties' competing motions and pleadings raise one question for purposes of this appeal: Does the summary judgment evidence conclusively establish either the existence or nonexistence of a settlement agreement or does the evidence raise a fact issue regarding the existence of a settlement agreement? *See* TEX.R. CIV. P. 166a(c), 166a(i); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Graves v. Komet,* 982 S.W.2d 551, 553 (Tex.App.—San Antonio 1998, no pet.).

In considering Consuelo's motion for summary judgment, evidence favoring Harris and USAA must be accepted as true and every reasonable inference must be resolved in their favor. *See Nixon,* 690 S.W.2d at 548–49. Conversely, in considering Harris's and USAA's motion for summary judgment, evidence favoring Consuelo must be accepted as true and every reasonable inference must be resolved in her favor. *See id.* We must consider the summary judgment motions filed by both sides and render the judgment the trial court should have rendered. *See Bradley v. State ex rel. White,* 990 S.W.2d 245, 247 (Tex.1999).

### 1. The Evidence

The Balderases hired an attorney named William J. Tinning to represent them regarding their claims against Harris. On August 23, 1994, Tinning wrote a letter to Mike Glover, who was acting as an adjuster for USAA on these claims. The letter stated:

This is a demand for 1.5 million dollars for each of the three parties. If your insured has less than that amount of insurance available, then consider this a full policy limits demand for all the insurance benefits available under any primary and excess policies of insurance she has with USAA. Those proceeds are to be divided with the full per person amount available to Consuelo Balderas and the remainder per person for accident limits to be divided equally between Mart[h]a Balderas Ruiz and her father Octavio Balderas. Any additional property damage limits are claimed separately over and above those limits, as well as any med pay benefits which may be applicable.

It is undisputed that at the time of the accident, Harris was covered by a USAA liability insurance policy with limits of $20,000 per person and $40,000 per accident.

Glover testified in an affidavit that he called Tinning's office on August 25 and talked to Tinning's paralegal, "Anna," who was the representative from Tinning's office whom he always dealt with on this matter. Glover stated that he advised the paralegal that USAA was tendering the $20,000 per person policy limit for Consuelo's claim. The paralegal, Anna Waldrop, made a memo of the August 25 conversation. Consistent with Glover's testimony, the memo states that Glover advised her on August 25 that "they were going to pay policy limits on Consuelo." In a different affidavit, Glover claimed that "[a]n agreement was reached with Mr. Tinning's office on August 25, 1994 that Ms. Harris' insurance carrier would pay its full 'per

person' policy limits to settle the claim of Consuelo Balderas."

Glover also testified by way of affidavit that Waldrop called on September 7 and requested the settlement papers and check for Consuelo's claim. He testified that during this phone conversation, he and Waldrop discussed whether Octavio's name should be included on the check and release. He assured Waldrop that placing Octavio's name on the check and release would not constitute a release of Octavio's bodily injury claim. He testified that "[p]ursuant to the instructions I received from Anna ... I ... issued the settlement check for $20,000.00 together with the Release, both of which included Octavio Balderas' name." Again, a memo made by Waldrop supports some of Glover's testimony. The memo recites that on September 7, she spoke with Glover "to ask where our limits were, and he said I could send someone over to ... pick it up today after 3:00." Glover's deposition testimony contains additional information about the September 7 conversation. In his deposition, Glover testified that Waldrop "requested that we go ahead and settle Consuelo's bodily injury case and to go ahead and issue the check, and she'd have someone from her office pick it up." Glover also stated that someone from Tinning's office picked up the check and settlement papers later in the afternoon of September 7.

A letter dated September 7 from Glover to Tinning stated:

> This will, of course, acknowledge your demand letter dated August 23, 1994 regarding your above clients and confirm our subsequent phone conversation wherein a settlement agreement was reached to settle only the bodily injury claim of Consuelo Balderas at this time for the $20,000.00 policy limits. . . .

A $20,000 check and a release were attached to this letter. The check was payable to "Consuelo Balderas & Octavio Balderas, individually and as wife & husband, and their attorney, William J. Tinning." The check also stated, "Nature of Payment: Any & [A]ll Claims, Liens, Assignment of Interest, Subrogation [C]laims, of Consuelo Balderas' bodily injury claim only." The release appears to be a pre-printed form. The top of the document states, "RELEASE OF ALL CLAIMS." Next to this pre-printed language, the following language was added, "FOR BODILY INJURY CLAIM OF CONSUELO BALDERAS ONLY." However, the text of the form purported to release

> any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which the undersigned now has/have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and property damage and the consequences thereof resulting [from the accident with Harris].

The release contained spaces for both Consuelo and Octavio to sign.

On September 23, 1994, Tinning returned the check to Glover with a letter stating, "The check did not meet our demand since your company improperly tries to add Mr. *and* Mrs. Balderas to the same $20,000.00 limit; (See the release and payer sections.)" The letter also referenced the *Stowers* doctrine and warned, "Suit will follow."

## 2. The Parties' Arguments

Harris and USAA argue that the trial court erred in granting Consuelo's motion for summary judgment and in denying their motions because the evidence conclusively establishes that the parties entered into an oral contract to settle Consuelo's bodily injury claim for $20,000. Alternatively, they argue that the court erred in granting Consuelo's motion because the evidence raises a fact issue regarding the existence of an oral settlement agreement.

The existence of an oral contract may be proved by circumstantial as well as direct evidence. *See PGP Gas Prods. v. Reserve Equip., Inc.*, 667 S.W.2d 604, 607 (Tex.App.—Austin 1984, writ ref'd n.r.e.). We look to the communications between the parties and to the acts and circumstances surrounding those communications. *See Copeland v. Alsobrook*, 3 S.W.3d 598, 605 (Tex.App.—San Antonio 1999, pet. denied); *see also Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex.1997) (holding that an attorney's statements constituted evidence of a pre-suit settlement); *Carter v. Allstate Ins. Co.*, 962 S.W.2d 268, 269–70 (Tex.App.—Houston [1st Dist.] 1998, pet. denied) (holding that affidavit of attorney stating that insurance adjuster offered to settle suit and he orally accepted created a fact issue regarding the existence of an oral settlement agreement). To form an enforceable contract, there must be an offer, an acceptance, and a meeting of the minds, and the terms must be expressed with sufficient certainty so that there will be no doubt as to what the parties intended. *See Copeland*, 3 S.W.3d at 604–05. The acceptance must be identical with the offer. *See Gilbert v. Pettiette*, 838 S.W.2d 890, 893 (Tex.App.—Houston [1st Dist.] 1992, no writ). If the purported acceptance contains terms that materially change the offer, the acceptance is actually a rejection and counter-offer. *See id.*

Consuelo argues that Glover's testimony that "[a]n agreement was reached with Mr. Tinning's office on August 25, 1994 that Ms. Harris' insurance carrier would pay its full 'per person' policy limits to settle the claim of Consuelo Balderas" is incompetent summary judgment proof because it is an unsupported legal conclusion. There are no facts in the affidavit to support Glover's statement that an agreement was reached. Standing alone, the statement is a bare conclusion with no probative value. *See Wiley v. Bertelsen*, 770 S.W.2d 878, 882 (Tex.App.—Texarkana 1989, no writ). But this testimony is not the only evidence of a settlement agreement.

Glover testified in another affidavit that he advised Waldrop on August 25 that USAA was tendering its $20,000 per person limit to settle Consuelo's claim. He also testified in his deposition that on September 7 Waldrop "requested that we go ahead and settle Consuelo's bodily injury case and to go ahead and issue the check." This is not a legal conclusion, but a recitation of words that were said to him. Additionally, Waldrop sent a courier to pick up the check and settlement papers. Viewed in the light most favorable to Harris and USAA, we can infer from this evidence an offer on August 25 to settle Consuelo's claim for $20,000 and an acceptance of those terms on September 7. These inferences are further supported by Glover's September 7 letter, which "confirm[s]" that in a phone conversation after August 23 "a settlement agreement was reached to settle only the bodily injury claim of Consuelo … for the $20,000 policy limits." Of course, the mere fact that a party believes he has entered into a contract is insufficient to establish the existence of a contract. *See Wiley*, 770 S.W.2d at 882. The letter is nevertheless *some* evidence of the existence of a settlement agreement and of its terms. *See Copeland*, 3 S.W.3d at 605–06 (letter referencing oral contract was some evidence that contract existed).

Consuelo argues that Glover's testimony that he entered into an agreement with a paralegal whom he knew only by first name does not establish a fact issue regarding the existence of an agreement because there is nothing in the record to show that Waldrop had the authority to make a binding agreement. However, Waldrop testified in an affidavit that she was the one who personally dealt with Mr. Glover in attempting to settle this matter before it proceeded to litigation. That all occurred in the normal course of my employment for Mr. Tinning in that I handle the initial work up of cases before they proceed to litigation and relay information to and from Mr. Tinning

for the presentation handling [sic] of claims and settlements.

One could infer from this testimony that Waldrop informed Tinning that Glover had offered to tender $20,000 to settle Consuelo's claim and that Tinning authorized her to accept the offer.

Because there is evidence from which a settlement agreement can be inferred, the trial court erred in granting a summary judgment declaring that no settlement agreement existed as a matter of law. We must now determine whether the evidence conclusively establishes a settlement agreement, so that Harris and USAA are entitled to rendition of summary judgment in their favor.

We first note that the language used in Tinning's September 23 letter indicates that no agreement was reached. The letter states that the check did not satisfy his "demand," not that the check did not satisfy the parties' "agreement" or "contract." The use of the word "demand" suggests that there had been no verbal acceptance of the terms of the August 23 letter and that no agreement had been reached.

Second, the evidence reflects that there was no meeting of the minds on the essential terms of the agreement. The record indicates that the parties had varying interpretations of exactly which claims were being settled and of what portion of the $20,000 Consuelo would receive. Tinning's September 23 letter indicates that he intended for Consuelo to receive the entire $20,000. This is consistent with the language in Glover's September 7 letter that "a settlement agreement was reached to settle *only the bodily injury claim of Consuelo Balderas at this time for the $20,000 policy limits*" (emphasis added). But other evidence, including USAA's attempted performance of the oral settlement agreement, indicates that Glover intended to settle not only Consuelo's bodily injury claim, but claims of Octavio as well. *Cf. Consolidated Eng'g Co. v. Southern Steel Co.*, 699 S.W.2d 188, 192–93 (Tex.1985) (holding that when a contract is ambigu-

ous, conduct of a party indicating the party's construction of the contract may be considered in determining the parties' true intent). The check and release attached to the September 7 letter indicate that Glover intended for Consuelo to share the $20,000 with Octavio. The check named Octavio as a payee in his individual capacity, and the release had a space for Octavio's signature. Glover testified that he assured Waldrop that placing Octavio's name on the check would not constitute a release of his *bodily injury* claim. The check and the release indicate that at least some other claims of Octavio would be released for the $20,000 amount; otherwise, his name would not have been included in these documents. Tinning indicated in his deposition testimony that Glover told him Octavio was included in the check and release to resolve his loss of consortium claim. Although Glover's testimony raises an inference that Tinning, through Waldrop, agreed to include Octavio's loss of consortium claim in the settlement, Tinning's September 23 letter objecting to the inclusion of Octavio raises the opposite inference.

The confusion regarding which claims were to be settled has continued into the appellate stage of this case. Harris and USAA insist on appeal that the parties agreed to settle only Consuelo's bodily injury claim. Yet USAA also maintains that the check and the release properly included Octavio because he was releasing his loss of consortium claim. They suggest that it was necessary for Octavio to release this claim because, as Tinning conceded in his deposition, both Consuelo's bodily injury claim and Octavio's loss of consortium claim are subject to the same $20,000 per person limit. *See McGovern v. Williams*, 741 S.W.2d 373, 375–76 (Tex.1987). But *McGovern* does not require a spouse to settle with the insurance company or to release the insured from all liability for the loss of consortium claim, and it certainly does not hold that the other spouse's settlement of her bodily injury claim extinguishes the loss of consortium claim as a

matter of law. *See Crockett v. Bell,* 909 S.W.2d 70, 75 (Tex.App.—Houston [14th Dist.] 1995, no writ) (holding that a spouse's loss of consortium claim is not barred by a settlement agreement or release executed only by the other spouse).

In short, the summary judgment evidence raises a fact issue regarding whether the parties had a meeting of the minds on the claims to be settled. We therefore conclude that Harris and USAA are not entitled to rendition of summary judgment in their favor.

Harris and USAA also argue that they conclusively established a written contract consisting of Tinning's August 23 letter, Glover's September 7 letter, the check, and the release. Consuelo counters that a written contract does not exist because the documents forming the purported acceptance do not match the terms of the offer in the August 23 letter.

According to Consuelo, Tinning's August 23 letter was a joint offer on behalf of all three of the Balderas claimants for all the available policy benefits—*i.e.,* $40,000. If this interpretation of the offer is correct, Glover's September 7 letter and attachments, which purported to settle only Consuelo's bodily injury claim (or Consuelo's bodily injury claim and other claims of Octavio) for $20,000, was a rejection and counter-offer.

Harris and USAA interpret the August 23 letter as containing a separate offer for each of the three claimants. As to Consuelo, the letter offered to settle for the per person policy limit. Therefore, the September 7 letter manifesting assent to settle Consuelo's claim for the $20,000 per person policy limit was a valid acceptance. Harris and USAA concede that the check and release contain some language that might appear to encompass claims of Octavio, but they argue that when these documents are properly construed, it is clear that the agreement contemplated only the settlement of Consuelo's bodily injury claim.

We believe Tinning's August 23 letter is ambiguous. The opening statement that "[t]his is a demand for 1.5 million dollars for each of the three parties" suggests three separate offers. The letter then requests that the proceeds be divided so that Consuelo receives the full per person amount available and Octavio and Marta divide the per accident amount. This request is consistent with three separate offers. Alternatively, the reference to all three claimants and the statement, "consider this a full policy limits demand for all the insurance benefits available" could be construed as a joint offer to settle the claims of all three claimants for the $40,000 limit. The remainder of the letter could be construed as simply informing Glover how to divide the money in the settlement checks. Because Tinning's August 23 letter is ambiguous, we cannot say as a matter of law that a written contract exists.

## CONCLUSION

The summary judgment evidence raises a fact issue regarding the existence of a settlement agreement. We therefore reverse the summary judgment granted in favor of Consuelo and remand the cause for trial.

Concurring and dissenting opinion by: PAUL W. GREEN, Justice

PAUL W. GREEN, Justice, concurring and dissenting.

I concur in that portion of the majority's opinion holding that this contract action is not a collateral attack on the personal injury judgment, and that Balderas is not entitled to a summary judgment. I dissent, however, to that portion of the majority's opinion holding that a fact issue exists regarding the existence of a settlement agreement between Harris and Balderas. I would hold that the summary judgment evidence establishes that Balderas settled her bodily injury claim against Harris for $20,000 and that Harris and USAA are

entitled to a judgment limiting their liability to that amount.

The question is whether the summary judgment evidence establishes an enforceable settlement agreement. A settlement agreement is judged like any other contract and, to be enforceable, must contain all the elements necessary to form a binding contract. A binding contract is made when there is an offer, an acceptance in strict compliance with the terms of the offer, and a meeting of the minds. *See Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex.App.-San Antonio 1999, pet. denied). In addition, consideration is a fundamental element of a contract. *Id.*

The facts surrounding the purported settlement agreement, detailed in the majority opinion, are essentially without dispute. On August 23, William Tinning, the lawyer for Consuelo, Octavio and Marta Balderas, wrote a letter to Mike Glover, the adjuster for USAA, Harris's insurer, making a demand for $1.5 million for each of his plaintiffs; provided, however, that if that amount exceeded Harris's policy limits, the demand was made for full policy limits for each. On August 25, Glover responded by telephone, speaking to Tinning's paralegal, Anna Waldrop, making a counter-offer for a partial settlement by offering the full $20,000 policy limit for Consuelo Balderas's bodily injury claim only. The counter-offer was accepted. We know this because on September 7 Waldrop called Glover looking for the settlement check and release. Later the same day, Tinning's office sent someone to Glover's office to pick up the check and the release.

Glover prepared a transmittal letter to Tinning, dated September 7, enclosing the check and release. The letter stated in clear, underlined terms that the settlement was for Consuelo's bodily injury claim only. The form release, although it contained general release language and called for Octavio's signature, was expressly limited to releasing only Consuelo's bodily injury claim by the conspicuous addition of the phrase "FOR BODILY INJURY CLAIM OF CONSUELO BALDERAS ONLY" on the face of the document. And the check itself, although it included Consuelo's husband as payee, was also expressly limited to payment for Consuelo's bodily injury claim only.

These documents, considered along with the affidavits of the participants, paint a clear picture of the parties' intent-which was to settle only Consuelo's bodily injury claim. Neither the inclusion of Octavio's name on the documents nor the existence of form general release language, in light of the more specific limiting language on the documents, allow for any other reasonable interpretation.

What, then, is the effect of including Octavio's name on the check and the release? USAA says Octavio's name was added because it believes a per-person bodily injury limit in an insurance policy includes a spouse's loss of consortium claim as a matter of law. *See McGovern v. Williams*, 741 S.W.2d 373, 376 (Tex.1987). Whether or not that is true, it makes no difference. The documents expressly release only Consuelo's bodily injury claims; they do not purport to release any of Octavio's claims.

Consuelo contends that adding Octavio's name to the check and release was a counter-offer to additionally release Octavio's loss of consortium claim. Consuelo argues that the counter-offer is evidence that no agreement was ever made. The majority agrees with Consuelo in part, pointing to Tinning's September 23 letter in which he states that "[t]he check did not meet our demand since your company improperly tries to add Mr. and Mrs. Balderas to the same $20,000.00 limit . . . ." (underline in original). The majority says this evidence raises a fact issue concerning the existence of an agreement. The flaw in the analysis, however, is that when the settlement documents were prepared and delivered to Tinning, the agreement was already in place.

The parties were at that time attempting to perform an enforceable agreement.

In my view, the check and release containing Octavio's name were, at worst, a defective attempt at performance. Whatever the perceived merits of adding Octavio's name to the documents, in truth it did not affect the agreement. Consequently, it was not a material breach of performance that would entitle Consuelo to repudiate the settlement agreement.

Because I believe Harris and USAA established the existence of an enforceable settlement agreement as a matter of law, they are entitled to a judgment. Accordingly, I respectfully dissent.