

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00334-CV

HOWARD OKON                                                    APPELLANT

V.

ROY BOLDON                                                       APPELLEE

----------

### FROM COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY
### TRIAL COURT NO. 2014-000197-3

----------

## MEMORANDUM OPINION[1]

----------

In five issues, appellant Howard Okon appeals the trial court's order denying his petition for bill of review.  We affirm.

## Background Facts

In September 2002, in a justice court, appellee Roy Boldon filed a personal-injury lawsuit against appellant.  Appellee pled for a money judgment

---

[1]See Tex. R. App. P. 47.4.

for medical bills that he incurred after he was a passenger in appellant's car during an accident.

Later that year, appellee obtained a default judgment against appellant. In the process of obtaining the judgment, appellee signed a document that requested substituted service of citation (by leaving the citation with someone over sixteen years old or attaching it to the front door of appellant's business) at an address on Cedar Springs Road in Dallas. He also signed a certificate of appellant's last known address, which included the same address.

In January 2014, appellant sought a bill of review in the trial court.[2] He pled that he had never been properly served with citation before the 2002 judgment. He alleged that appellee had obtained that judgment "as a result of fraud, accident[,] and wrongful act . . . e.g. fraudulent failure to serve [process,] . . . which prevented [appellant] from asserting his meritorious defense." Appellant alleged that his defense was that he was not "driving the vehicle at the time of the supposed accident." He asked the trial court to vacate the 2002 judgment and grant a new trial in that proceeding. Appellee answered the petition for bill of review by contending, in part, that a statute of limitations barred the petition.

---

[2]Previously, he had filed a petition for bill of review in the justice court. This case appears to arise from an unsuccessful appeal to the trial court from the justice court's ruling.

In July 2014, the trial court held a hearing on the petition. Appellant testified that in 2013, approximately a year and a half before the hearing, he first learned about the judgment against him. He stated that he had never been served with citation in the 2002 suit and that he had not otherwise known that a lawsuit was filed against him. He implied that the citation had been sent to the Cedar Springs Road address, which was the location of a bar called Moby Dick that he partly owned and that he had visited occasionally. Appellant testified that he had never received mail at the bar and had not maintained an office there, but he acknowledged that he knew employees there. He also stated that he did not know appellee closely, although he testified that appellee "probably was one of [his] customers."

Michael Dupree, who was a constable in 2002, testified that on November 1, 2002, one of his deputies, Michael Orozco, executed a return of citation that stated, "[E]xecuted . . . at 11:34 a.m. by delivering to Howard Okon by securely attaching to the front door . . . at [the bar]." Dupree stated that this citation was defective under the policy of his office at that time because it did not describe what the deputy attached to the front door—that is, it did not explicitly state that the deputy attached the citation and petition. Dupree also stated that a substituted-service citation should have been enclosed in a plastic envelope and attached to the door with duct tape and that his office's policy was to diligently attempt personal service before using substituted service. Dupree opined, however, that the citation was only defective, not fraudulent.

3

Appellee testified that the 2002 lawsuit arose from injuries he suffered after appellant paid him to "take some furniture to his brother in Austin." He stated that he had sued appellant because "it was [appellant's] truck that [he was] hurt in" and because appellant had agreed to pay (but had failed to pay) a chiropractor's bill following the accident.

Appellee stated that he did not "know where the address [for the bar] came about"; he explained that he did not provide the information for that address to be used in 2002 and that as of 2014, he did not "have a clue what [appellant's] last mailing address [was]." But he admitted that in 2002, he signed a document certifying the bar's address as appellant's last known address, although he did not remember signing that document and stated that he did not type the document. He agreed that it was possible that in 2002, he knew what the address was but had since forgotten. He stated, "I did what I was told to do by the court . . . for [appellant] to take care of the responsibilities that he's supposed to take care of."

Appellee also explained that he did not know Orozco, that there was no agreement between him and Orozco to defraud appellant, and that it was not his intention in 2002 to "slide [the] lawsuit past" appellant. Appellee agreed that it was his "intention to serve [appellant] with the lawsuit."

Orozco testified that in 2002, Dupree assigned the citation to him, and he explained,

4

I received the paper, and I made several attempts [to serve it]. I went to the address that was given. I went to the location, and it was a business. . . . I went in there and asked . . . if the defendant was in, and they said no. And I said okay. And they said it's his business. And I left a card to have him call me.

. . . .

. . . So I made that attempt. And I can't remember if I made another attempt, but then someone called me. And I believe it was his attorney or someone . . . with knowledge of the lawsuit inquiring to me what was . . . going on.

. . . .

. . . And so I had the phone call. And then also my boss at the time, Constable Mike Dupree[,] had actually called me into his office asking me what was going on with this lawsuit, that he had got a phone call.[3] And so I told him what was going on. And . . . I told him that I received a phone call from an attorney.

And he said: Well, just make sure, you know, you do what you got to do. If you got to do substitute service, then so be it. Just go ahead and get it served. He just wanted to know what was going on.

And I proceeded to make a few more attempts[4] . . . at which time I went ahead and applied for substituted service with the court.

Orozco explained that after having concluded that appellant was avoiding service, he obtained an order for substituted service[5] and left the citation, by using rubber bands, on the front door of the bar, which he was reasonably certain

---

[3]Dupree appeared to deny getting such a phone call.

[4]Orozco could not remember precisely how many times he attempted to personally serve the citation.

[5]Appellee signed a motion for substituted service that led to the order. In the motion, appellee represented that the bar's address was appellant's business.

5

was appellant's place of business. Upon questioning from appellant's counsel, Orozco "strongly disagree[d]" with Dupree's conclusion that the service was defective. Orozco stated that he never knew appellee and that it was not his intent to serve citation in a way that would prevent appellant from receiving it. He also explained that he did not make any attempt to find the address for appellant's residence because he had "established a good address for his business."

After the parties concluded their presentation of evidence and arguments, the trial court denied appellant's petition for bill of review. Appellant asked the trial court to file findings of fact and conclusions of law, and the trial court did so. The court found that appellant had filed the petition more than four years after the date of the judgment, that he had known or should have known of the existence of the judgment at the time it was signed, and that he had failed to prove that the judgment was obtained through anyone's extrinsic fraud. The court's conclusions of law imply that the court ruled that a statute of limitations barred appellant's petition.[6] Appellant brought this appeal.

---

[6]The conclusions state,

1. A petition for bill of review must be filed after the trial court's plenary power expires, but within the residual four-year statute of limitations.

2. There is only one exception to the four-year statute of limitations as it pertains to bills of review, and that is when the judgment debtor can prove that the judgment was obtained through extrinsic fraud.

## Statute of Limitations

Each of appellant's five issues appears to challenge, at least in part, aspects of the trial court's overall conclusion that a statute of limitations precludes appellant's petition for bill of review. In appellant's first two issues, he challenges the sufficiency of the evidence to support the trial court's findings that he knew of the existence of the default judgment and that he failed to prove that the judgment was obtained by extrinsic fraud. In his third through fifth issues, he argues that the trial court incorrectly concluded that his bill of review needed to be filed within four years of the entry of the default judgment against him, incorrectly determined that there is only one exception to the statute of limitations as it pertains to bills of review, and incorrectly defined extrinsic fraud.

Generally, we review the denial of a bill of review for an abuse of discretion. *Davis v. Smith*, 227 S.W.3d 299, 302 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see Weast v. Office of the Attorney Gen.*, No. 02-12-00488-CV, 2014 WL 7204553, at *2 (Tex. App.—Fort Worth Dec. 18, 2014, no pet.) (mem. op.); *see also In re E.M.*, No. 02-13-00337-CV, 2014 WL 5409091, at *1 (Tex. App.—Fort Worth Oct. 23, 2014, no pet.) (mem. op.) ("When the bill of review inquiry concerns questions of law, . . . we review the trial court's decision de novo."). To determine whether a trial court abused its discretion, we must

---

3. Extrinsic fraud is conduct outside the trial, such as keeping a party away from court or making false promises of compromise, that prevents a losing party from fully litigating rights or defenses and prevents a real trial on the issues involved.

decide whether the court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.  *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007).

Under the abuse of discretion standard, challenges to the sufficiency of the evidence are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion.  *See Edwards v. Mid-Continent Office Distribs.*, 252 S.W.3d 833, 835 n.6, 836 (Tex. App.—Dallas 2008, pet. denied); *El Paso Cnty. Hosp. Dist. v. Gilbert*, 64 S.W.3d 200, 203–04 (Tex. App.—El Paso 2001, pet. denied).  "An abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence."  *Weast*, 2014 WL 7204553, at *2; *see also In re M.O.*, 451 S.W.3d 910, 914 (Tex. App.—El Paso 2014, no pet.) (explaining that there is no abuse of discretion "as long as some evidence of substantive and probative character exists to support the trial court's decision").  The trial court is "the fact-finder at a hearing on a bill of review and has the duty of ascertaining the true facts, and it is within the court's province to judge the credibility of the witnesses and to determine the weight to be given their testimony."  *Dias v. Dias*, No. 13-12-00685-CV, 2014 WL 6679525, at *6 (Tex. App.—Corpus Christi Nov. 25, 2014, pet. filed) (mem. op.).

A bill of review is an equitable proceeding to set aside a judgment that is no longer appealable or subject to challenge due to the expiration of the trial court's plenary power.  *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 275 (Tex. 2012).  A bill of review is a direct attack on the prior judgment, and the

petitioner's burden is heavy due to the importance of according finality to judgments; as such, the grounds on which a petitioner may obtain relief by bill of review are narrow and defined. *See Mabon Ltd. v. Afri-Carib Enters.*, 369 S.W.3d 809, 812 (Tex. 2012); *see also Valdez v. Hollenbeck*, No. 13-0709, 2015 WL 3640887, at *6, *10 (Tex. June 12, 2015) (explaining that bills of review are brought as direct attacks and are "not lightly granted").

Generally, a petition for bill of review must be brought within four years of the rendition of the challenged judgment. *PNS Stores, Inc.*, 379 S.W.3d at 275 (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (West 2015) (creating a residual limitations period of four years after the accrual of the cause of action)); *see also Valdez*, 2015 WL 3640887, at *6–7. But when a bill-of-review petitioner proves that the challenged judgment was obtained through extrinsic fraud, the four-year limitations period may be tolled until the bill-of-review petitioner knew or should have known about the fraud and the judgment. *See Valdez*, 2015 WL 3640887, at *1; *PNS Stores, Inc.*, 379 S.W.3d at 277 n.16; *Defee v. Defee*, 966 S.W.2d 719, 722 (Tex. App.—San Antonio 1998, no pet.).

Extrinsic fraud is fraud that denies a litigant the opportunity to fully litigate at trial all the rights or defenses that could have been asserted. *PNS Stores, Inc.*, 379 S.W.3d at 275. It occurs when a litigant has been misled by his adversary by fraud or was denied knowledge of the suit. *Id.* Such fraud must be "purposeful." *Alderson v. Alderson*, 352 S.W.3d 875, 878 (Tex. App.—Dallas 2011, pet. denied).

9

**Extrinsic fraud**

Appellant filed his petition for bill of review well more than four years after the challenged judgment; thus, the statute of limitations bars the petition unless he proved that appellee obtained the judgment through extrinsic fraud. *See Temple v. Archambo*, 161 S.W.3d 217, 223–24 (Tex. App.—Corpus Christi 2005, no pet.) (stating that extrinsic fraud is the only exception to the four-year limitations period); *Law v. Law*, 792 S.W.2d 150, 153 (Tex. App.—Houston [1st Dist.] 1990, writ denied) (stating the same).

In his second issue, appellant argues that the evidence is insufficient to support the trial court's finding that he failed to prove that the default judgment was obtained through extrinsic fraud. Specifically, he argues on appeal that appellee's filing allegedly false instruments—the certification of last known address and the affidavit supporting substituted service—with the clerk in 2002 constituted extrinsic fraud.[7] And in his related fifth issue, appellant asserts that the trial court erred by concluding that extrinsic fraud is "conduct outside the trial, such as keeping a party away from court or making false promises of

_____

[7]During the hearing on appellant's petition for bill of review, when appellee's counsel asked appellant "what fraud occurred and by whom in the procurement of [the 2002] judgment," appellant stated,

> Well, the whole case that's been brought against me I consider fraud. I was not -- I was not notified about this. I was not -- I didn't know about this. I didn't -- I wasn't in the car. This is not anything to do with me. So everything that has to do with this case has nothing to do with me, so I consider it fraud.

compromise, that prevents a losing party from fully litigating rights or defenses and prevents a real trial on the issues involved."

Concerning appellant's fifth issue, we cannot conclude that the trial court's definition was erroneous; the trial court defined extrinsic fraud precisely the same way that this court and other courts have defined that term. *See, e.g.*, *In re J.B., Jr.*, No. 02-08-00195-CV, 2009 WL 485717, at *2 (Tex. App.—Fort Worth Feb. 26, 2009, no pet.) (mem. op.); *Sotelo v. Scherr*, 242 S.W.3d 823, 827 (Tex. App.—El Paso 2007, no pet.). Appellant does not cite authority establishing that the definition of extrinsic fraud provided in these cases and repeated by the trial court is erroneous, even if the definition may not have been exhaustive. We overrule appellant's fifth issue.

With regard to appellant's second issue, we cannot conclude that the trial court abused its discretion by finding that appellant failed to prove extrinsic fraud. *See Davis*, 227 S.W.3d at 302. The "controlling question" in an extrinsic-fraud analysis "is always whether the alleged fraud prevented the party from knowing about and presenting his legal rights at trial." *Montgomery v. Kennedy*, 669 S.W.2d 309, 314 (Tex. 1984); *Kennell v. Kennell*, 743 S.W.2d 299, 301 (Tex. App.—Houston [14th Dist.] 1987, no writ).

Here, the trial court could have reasonably resolved conflicting evidence presented by the parties to find that no person intended to deceive appellant or prevent him from knowing about the suit in 2002, that appellant actually knew about the suit at that time, and that he intentionally avoided being personally

11

served. Orozco testified that he made several attempts to personally serve appellant with citation at the bar's address, which one of the bar's employees confirmed to be "[appellant's] business." Orozco stated that he left a card at the bar and instructed the employee to tell appellant to call Orozco. And Orozco testified that he and Dupree each later received a call from "[appellant's] attorney or someone . . . inquiring . . . what was going on." He later specified that he had spoken to appellant's attorney or someone who represented himself as appellant's attorney. Orozco concluded that based on eighteen years of experience working in a constable's office, he believed that appellant was attempting to avoid service because he was "receiving phone calls and people were coming to [him] with someone *knowing . . . that the lawsuit existed*." [Emphasis added.]

Orozco and appellee agreed that they did not know each other in 2002 and that they had not conspired to prevent appellant's knowledge of the suit. Although appellee testified that he did not know why the Cedar Springs Road address (the bar's address) was contained on a document he signed in 2002, he also testified that he did not remember signing the document and that it was possible that he had known what the address related to in 2002 but had since forgotten. Appellee denied that he had intended to "try to slide [the] lawsuit past [appellant] and get a judgment against him without him finding out about it"; he stated that he had intended to serve appellant with the lawsuit.

Based on this testimony, which the trial court had the prerogative to credit, we cannot conclude that the trial court abused its discretion by finding that appellant failed to prove extrinsic fraud; the trial court could have reasonably found that appellee and Orozco did not purposefully hide knowledge of the suit from appellant and that appellant actually knew about it. *See Weast*, 2014 WL 7204553, at *2; *Layton v. Nationsbanc Mortg. Corp.*, 141 S.W.3d 760, 763 (Tex. App.—Corpus Christi 2004, no pet.) ("The element of purposeful fraud is important in establishing extrinsic fraud."). We overrule appellant's second issue.

**Knowledge of judgment**

In appellant's first issue, he argues that the evidence does not support the trial court's finding that he knew of the existence of the judgment at the time it was signed.[8] Within the argument on this issue, he cites only one case while contending that the "bar of the statute of limitations on actions to set aside a judgment for fraud does not commence to run until the defendant discovered or in exercise of care ought to have discovered the fraud." *See Maddux v. Brownen*, 759 S.W.2d 183, 185 (Tex. App.—Waco 1988, writ denied). But we have already concluded that the trial court did not abuse its discretion by finding that there was no extrinsic fraud. Also, as related to the statute of limitations to file his petition for bill of review, the date of appellant's knowledge of the 2002 judgment is only material if he had proved extrinsic fraud; otherwise, limitations

---

[8]Appellant does not expressly challenge the trial court's related finding that appellant "should have known" of the judgment.

13

runs upon the judgment's rendition.  *See Valdez*, 2015 WL 3640887, at *1; *PNS Stores, Inc.*, 379 S.W.3d at 275, 277 n.16.  Thus, in light of our conclusion that the trial court did not abuse its discretion by finding that appellant failed to prove extrinsic fraud, we overrule appellant's first issue as moot.

**The trial court's first two conclusions of law**

In the title of appellant's third and fourth issues, he contends that the trial court erred in its conclusions of law that a bill of review "must be filed within four years after the default judgment was entered" and that only one exception—extrinsic fraud—exists to toll the limitations period.  The legal authority cited above supports those conclusions, so we overrule these issues to the extent that they attack the conclusions directly.

In the body of the third and fourth issues, appellant contends that the 2002 judgment is "constitutionally infirm" and may be collaterally attacked (as distinguished from a bill of review's direct attack) because he was not served with citation in 2002 and because the justice court therefore did not acquire personal jurisdiction over him.  Appellant did not plead a collateral attack or obtain rulings concerning his constitutional rights or personal jurisdiction in the trial court.  We conclude that appellant cannot, for the first time in this appeal from the denial of his direct attack on the 2002 judgment through a petition for bill of review, change the nature of the suit by raising a collateral attack.  *See* Tex. R. App. P. 33.1(a); *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010) (describing a collateral attack as a "new lawsuit"); *Browning v. Prostok*, 165 S.W.3d 336, 346

14

(Tex. 2005) (describing a collateral attack as an attempt to avoid the binding force of a judgment in a proceeding "*not instituted for the purpose* of correcting, modifying, or vacating the judgment" (emphasis added)); *Sweetwater Austin Props., L.L.C. v. SOS Alliance, Inc.*, 299 S.W.3d 879, 885–86 (Tex. App.—Austin 2009, pet. denied) (distinguishing between direct attacks and collateral attacks and holding that an unsuccessful direct attack cannot morph into a collateral attack); *Royal Indep. Sch. Dist. v. Ragsdale*, 273 S.W.3d 759, 766 n.7 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (holding that when a trial court's order was not properly challenged in that court through a direct attack, it could not be properly challenged for the first time on appeal through a collateral attack); *Kenseth v. Dallas Cnty.*, 126 S.W.3d 584, 596–97 (Tex. App.—Dallas 2004, pet. denied) ("[A] collateral attack is traditionally brought in a separate proceeding. An appeal of an order in the same proceeding—brought 'for the purpose of correcting, modifying or vacating' that order—is a direct attack on the order, not a collateral one." (quoting *Harris v. Balderas*, 27 S.W.3d 71, 73 (Tex. App.—San Antonio 2000, pet. denied)). We overrule the remainder of appellant's third and fourth issues.

## Conclusion

Having overruled all of appellant's issues, we affirm the trial court's order denying his petition for bill of review.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER, J.; and CHARLES BLEIL, Senior Justice, Retired, Sitting by Assignment.

DELIVERED: August 6, 2015