Dr. Danford BOOKOUT, Phyllis Bookout, and Bookout Chiropractic Center, Inc., Appellants,

v.

Dr. Cris BOOKOUT and Teresa Bookout, Appellees.

No. 06–04–00049–CV.

Court of Appeals of Texas, Texarkana.

Submitted April 27, 2005.

Decided June 10, 2005.

Rehearing Overruled July 6, 2005.

John R. Mercy, Mercy, Carter, Tidwell, LLP, Texarkana, for appellants.

Don Cooksey, Kaylin D. Kluge, Law Office of Don Cooksey, Texarkana, for appellees.

Before MORRISS, C.J., ROSS and CORNELIUS,* JJ.

## OPINION

Opinion by Chief Justice MORRISS.

For seven years, Cris Bookout thought he had a deal to purchase the Bookout Chiropractic Center (Clinic) for which Cris was the sole practicing chiropractor. In 1994, a document styled "Contract for Deed" had been created—but never signed—detailing terms of what might become Cris' purchase from his brother, Danford Bookout (Dan), and Dan's wife, Phyllis, of real and personal property constituting the Clinic. Between July 1994 and August 2001, Cris had arranged for payments totaling $3,000.00 per month—the amount specified in the unsigned "Contract"—to Dan and Phyllis. Those payments had been made from Bookout Chiropractic Center, Inc. (Corporation), the entity through which Cris ran the Clinic during those years, but an entity owned by Dan and Phyllis. In August 2001, Cris and Dan had a disagreement; Cris was fired as an employee of the Corporation; and Cris[1] sued Dan, Phyllis, and the Corporation for breach of the Contract. A jury found that Cris had a contract with Dan, Phyllis, and the Corporation; that the contract had not been honored by Dan, Phyllis, and the Corporation; and that Cris should recover damages and attorneys fees against all three. On appeal, the three defendants assert that the statute of frauds bars recovery and that no, or insufficient, evidence[2] exists of any involvement

---

* William J. Cornelius, Retired, Chief Justice, Sitting by Assignment.

1. Cris' wife, Teresa, originally joined the suit with Cris. The "Contract"—and at trial the jury charge and findings—did not name Teresa. No evidence was adduced at trial showing her involvement in the Contract. The trial court initially erroneously included Teresa in the judgment but later amended the judgment to drop any mention of Teresa in the body of the judgment. The amended judgment, however, does not explicitly render a take-nothing judgment against her. Teresa does not play a role in this appeal, so she is omitted in this opinion. We presume that the trial court "intended to, and did, dispose of" Teresa and all issues involving her. *See N.E. Ind. Sch. Dist. v. Aldridge,* 400 S.W.2d 893, 897–98 (Tex.1966).

2. In determining a no-evidence issue, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex. 2001); *Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450(Tex.1996). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cazarez,* 937 S.W.2d at 450. When deciding a no-evidence point, in determining whether there is no evidence of probative force to support a jury's finding, we must consider all the evidence in the record in the light most favorable to the party in whose favor the verdict has been rendered, and we must apply every reasonable inference that could be made from the evidence in that party's favor. *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). In this review, we disregard all evidence and

in the Contract by Phyllis or the Corporation.

We affirm in part and reverse and render in part. We do that because we hold (1) Cris' partial performance removes the contract from the statute of frauds, (2) sufficient evidence supports Phyllis' liability, and (3) no evidence supports the Corporation's liability.

### 1. Cris' Partial Performance Removes the Contract from the Statute of Frauds

 Whether a contract falls within the statute of frauds is a question of law. *Bratcher v. Dozier,* 162 Tex. 319, 321, 346 S.W.2d 795 (1961). A contract which is for the sale of real estate or which is not to be performed within one year after the agreement's formation is not enforceable unless

it is (1) in writing and (2) signed by the person to be charged with the promise. Tex. Bus. & Com.Code Ann. § 26.01 (Vernon 2002). It is uncontroverted that, though the Contract was partly for the sale of real property and was not to be performed within a year, it was not signed.[3] Thus, the Contract is unenforceable unless an exception to the statute of frauds applies.

 Partial performance is an exception to the statute of frauds. *Exxon Corp. v. Breezevale, Ltd.,* 82 S.W.3d 429, 439 (Tex.App.-Dallas 2002, pet. denied). The partial performance must be "unequivocally referable to the agreement and corroborative of the fact that a contract actually was made." *Id.* Actions relied on to establish the partial performance exception to the statute of frauds must be such as could have been done with no other design than

inferences to the contrary. *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex. 1995); *Best v. Ryan Auto Group, Inc.,* 786 S.W.2d 670, 671 (Tex.1990). A no-evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex.1998).

More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.,* 77 S.W.3d 253, 262 (Tex.2002). If we find some probative evidence, we will test the factual sufficiency of that evidence by examining the entire record to determine whether the finding is clearly wrong and unjust.

When considering a factual sufficiency challenge to a jury's verdict, courts of appeals must consider and weigh all of the evidence, not just that evidence which supports the verdict. *Mar. Overseas Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex.1998). A court of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that

the verdict is clearly wrong and unjust. *Id.; Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). The court of appeals is not a fact-finder. Accordingly, the court of appeals may not pass on the witnesses' credibility or substitute its judgment for that of the jury, even if the evidence would clearly support a different result. *Ellis,* 971 S.W.2d at 407. If we find the evidence insufficient, we must clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). In so doing, we do not pass on the credibility of the witnesses, and we do not substitute our opinion for the trier of fact, even if there is conflicting evidence on which a different conclusion could be supported. *Clancy v. Zale Corp.,* 705 S.W.2d 820, 826 (Tex.App.-Dallas 1986, writ ref'd n.r.e.).

3. Dan, Phyllis, and the Corporation argue also that there was no evidence of any contract. We disagree. There is sufficient evidence of a contract in the record, some of which we review in our discussion of the evidence of partial performance. Additionally, a written, but unsigned, draft contract may be admitted as evidence of a parol agreement. *See Ayers v. Herring,* 32 S.W. 1060(Tex.Civ.App.1895, no writ).

to fulfill the particular agreement sought to be enforced; otherwise, they do not tend to prove the existence of the parol agreement relied on by the plaintiff. *Id.*

■ Generally, the party claiming an exception to the statute of frauds must secure a finding to that effect. *Barbouti v. Munden,* 866 S.W.2d 288, 295 (Tex.App.-Houston [14th Dist.] 1993, writ denied). Here, partial performance was not submitted to the jury, and there was no request that the trial court make a finding on partial performance. Those failures would be fatal to Cris' case unless a finding on partial performance is otherwise implied by law. We hold such a finding is implied because (A) partial performance is necessarily referable to the Contract, and (B) there is sufficient evidence of partial performance.

*(A) Partial Performance Is Necessarily Referable to the Contract*

■ Applicable to this issue is Rule 279 of the Texas Rules of Civil Procedure. When a ground of recovery or defense consists of more than one element, if one or more of such elements necessary to sustain such ground of recovery or defense, and necessarily referable thereto, are submitted to and found by the jury, and one or more of such elements are omitted from the charge, without request or objection, and there is factually sufficient evidence to support a finding thereon, the trial court, at the request of either party, may after notice and hearing and at any time before the judgment is rendered, make and file written findings on such omitted element or elements in support of the judgment. If no such written findings are made, such omitted element or elements shall be deemed found by the court in such manner as to support the judgment. TEX.R. CIV. P. 279. Under Rule 279, the authority for an implied finding on any unsubmitted issue belonging to a given ground of recovery or defense depends on there having been a submission of some other issue "necessarily referable" to that same ground of recovery or defense. *Tex. Employers' Ins. Ass'n v. Hilderbrandt,* 62 S.W.2d 209 (Tex.Civ.App.-Beaumont 1933, no writ).

■ We therefore must decide whether, within the meaning of Rule 279, proof of partial performance, as an exception to the statute of frauds, is an "element" of Cris' contract "ground of recovery" or is, instead, exterior to that ground of recovery. While we find no controlling precedent on the question, some guidance can be obtained from analogous caselaw.

A farmer sued a neighboring railroad company for flooding, and thus damaging, his crop. The jury found how many bales of cotton the farmer would have grown but for the flood damage. The trial court failed, and there was no objection directed at the failure, to ask the jury how many bales of cotton the plaintiff *actually* raised on the land. The Texas Supreme Court determined the two issues were complementary and therefore implied a finding on the unsubmitted issue, since there was sufficient evidence on the issue consistent with the judgment. *See Wichita Falls & Okla. Ry. Co. v. Pepper,* 134 Tex. 360, 135 S.W.2d 79, 84 (1940).

In a dispute between a building contractor and its rental equipment supplier, the jury found that the original contract between the two existed and also determined a value of the contractor's "cover" incurred in lieu of the equipment which was to have been—but was not—supplied under the terms of the original contract. The jury was not asked whether the original contract was breached by the equipment supplier or whether the supplier agreed to allow the contractor to obtain "cover" for the equipment the supplier did not provide. The appellate court implied those

two findings under this rule. *See Presslor v. Kandy, Inc.*, 611 S.W.2d 953, 956 (Tex. App.-Waco 1981, writ ref'd n.r.e.).

A take-nothing judgment, based on limitations, was rendered after a jury found a plaintiff failed to use diligence in serving process on the defendant. The jury charge omitted any question about when the cause of action accrued, but this Court affirmed the judgment, implying the needed finding under this rule. *See Hoffman v. Wall*, 602 S.W.2d 324, 326 (Tex.App.-Texarkana 1980, writ ref'd n.r.e.).

In a dispute between a landowner and a concrete contractor, the jury found both that the contractor had not substantially performed the agreed task of laying a foundation on the landowner's property and that $300.00 was the cost of removing from the property the foundation work which was done by the contractor. On appeal from a judgment in favor of the landowner, the appellate court rejected the contractor's argument that there was no jury finding on the need to remove the foundation, because it was properly implied from the issues decided by the jury. *See Volkman v. Eakman*, 496 S.W.2d 752, 757 (Tex.App.-Fort Worth 1973, writ ref'd n.r.e.).

An individual sued, and recovered a judgment against, his former employer for wages under an oral contract. The jury found the parties had contracted for the employment but made no finding that the employee performed under the contract, because the latter issue had been improperly conditioned on a negative answer to the former. The appellate court implied a finding on that issue under Rule 279. *See AAA Air Conditioning & Mfg. Corp. of Tex. v. Barr*, 186 S.W.2d 825, 826–27 (Tex. Civ.App.-Dallas 1944, writ ref'd).

A buyer of a tire sealing product sued the product's manufacturer for breach of express and implied warranties, among other complaints, but the jury was not asked whether the buyer gave the manufacturer the required advance notice of breach of express warranty. From a trial court judgment for the buyer, the appeal, in part, dealt with the question of whether notice of breach of express warranty could be implied from express jury findings that an express warranty was breached. The appellate court characterized notice as a condition precedent for the buyer's cause of action for breach of express warranty, rather than lack of notice being an affirmative defense to that cause of action. The court's analysis thus suggested that the buyer's notice of breach of *express* warranty would have been the subject of an implied finding, but for the jury's express finding that the buyer failed to give notice of breach of an *implied* warranty. *See U.S. Tire–Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 198–200 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). To similar effect is *Tex. Tech Univ. Health Sci. Ctr. v. Apodaca*, 876 S.W.2d 402, 411 (Tex. App.-El Paso 1994, pet. denied) (implied omitted finding of notice as one element of negligence action under Texas Tort Claims Act claim).

In the present case, the trial court submitted the questions, serially, whether Dan, Phyllis, and the Corporation intended to bind themselves to an agreement; whether Dan, Phyllis, and the Corporation breached that agreement; and what amount of damages would compensate Cris for his resulting damages.[4] The jury was not asked to address partial performance, and that was omitted without a request or an objection. Post verdict, the trial court

---

**4.** Clearly, those submitted issues were necessarily referable to the sole ground of recovery, contract.

was not asked to, and did not, make an express finding on such issue.

Because it is uncontroverted that the statute of frauds had been triggered and would bar Cris' recovery unless he established partial performance of the Contract, partial performance was a condition precedent to, and therefore was functionally an element of, Cris' breach of contract ground of recovery. Under this record, the issue of whether there was a contract and the issue of whether Cris partially performed it are strongly linked, in that most of the evidence that the Contract existed is the evidence of Cris' partial performance of its terms.

■■■■ The purpose of the rule implying omitted findings is to require defects in a jury charge to be brought to the trial court's attention, so the defects can be corrected before submission to the jury. *Neuman v. Tex. Employers' Ins. Ass'n*, 377 S.W.2d 108 (Tex.Civ.App.El Paso), *rev'd on other grounds*, 379 S.W.2d 295 (Tex.1964). Limiting the application of the rule to issues "necessarily referable" to a particular ground of recovery or defense is for the purpose of giving fair notice of incomplete submission to the parties. *Superior Trucks, Inc. v. Allen*, 664 S.W.2d 136 (Tex.App.-Houston [1st Dist.] 1983, writ ref'd n.r.e.).

In light of the rule's purpose, the analogous caselaw, and this record, we conclude the element of partial performance was, within the meaning of Rule 279, an omitted element of Cris' ground for recovery. We therefore hold that the trial court impliedly found, in support of the judgment, that Cris partially performed the Contract, if such a finding is supported in the evidence. *See* TEX.R. CIV. P. 279.

*(B) There Is Sufficient Evidence of Partial Performance*

■■■■ Whether sufficient partial performance has occurred is a question of fact. *Fluellen v. Young*, 664 S.W.2d 776, 781 (Tex.App.-Dallas 1983, no writ). We hold partial performance is supported by sufficient evidence.

In support of his assertion of partial performance, Cris points to the payment of $3,000.00 per month to Dan and Phyllis, beginning in July 1994 and continuing until August 2001. Dan, Phyllis, and the Corporation point to the fact that the payments came from the funds of the Corporation, a Corporation owned by Dan and Phyllis. They also point out that the payments were designated as rent or salary. Therefore, they argue, Cris did not partially perform the agreement; hence, the statute of frauds prevents the enforcement of the unsigned contract.

True, the $1,000.00 checks to Phyllis were marked as payroll items. The $2,000.00 checks to Dan initially were designated "Clinic Payment," but in May 1995 began to be designated "rent." Cris testified these payments were indeed for the purchase of the Clinic, but that Dan and Phyllis directed the designations for tax benefits. Over time, the payments changed from once a month to bi-weekly, and then back again. Cris' testimony explained that, again, these were the directives of Dan and Phyllis.

Moreover, according to Cris, Phyllis worked approximately five hours a week at the Clinic for the first two to three years, starting in July 1994. Ordinarily, for the hours Phyllis worked, she received compensation besides the monthly $1,000.00 "payroll" payments. The record shows Phyllis received her usual $1,000.00 March 1, 1995, but then also was paid $50.00 March 3, 1995, the additional check designated as "Office Help." Thereafter, Phyllis' pattern was to work approximately five hours a month. Phyllis, herself, testified that she would work at the Clinic when an employee was absent, but did not always

receive extra compensation for the work. Cris testified that Phyllis was paid separately, when compensated, for her help at the Clinic, in addition to the $1,000.00 payments. From this evidence, the jury could have concluded the $1,000.00 payments were for something other than for services rendered, notwithstanding the way in which they were marked.

Dan and Phyllis testified they received rent and salary from the Clinic before 2001, in monthly amounts totaling from $1,000.00 to $1,800.00—a fluctuation which depended on the income of the Clinic. The record reflects that, before July 1994, Dan and Phyllis did not receive $3,000.00 payments. They did thereafter. It is also worth noting that, even when the Clinic experienced a $23,000.00 loss in 1997, Dan and Phyllis continued to receive monthly $2,000.00 and $1,000.00, respectively.

That the payments came from the Corporation's funds is not dispositive, because the evidence is also clear that, during this time, the only practicing chiropractor generating income for the Corporation was Cris, and the parties treated the 1994 Contract as effectively putting the Corporation in Cris' hands for all purposes.

Cris exercised possession and control of the Corporation by operating the Clinic on a day-to-day basis after the Contract. From 1980 to July 1994, Cris had no managerial duty and was inactive in the Clinic's daily operation. From July 1, 1994, through August 1, 2001, Cris paid, from the Corporation's account, all the bills, salaries, and taxes. For those seven years, Cris kept track of all the income and the expenses of the Clinic.

After July 1994, Cris computerized the Clinic. The Clinic computer system was upgraded in 1997 and 2000. Cris personally borrowed against his savings account to pay for these improvements. Cris also replaced the x-ray processor. Again, Cris personally borrowed against his savings account to pay for the processor. In total, Cris incurred personal debt of $7,500.00 to pay for the computer upgrades and the x-ray processor.

There were additional changes in the operation of the Clinic after July 1994. Before July 1994, Dan owned an airplane, for which the Corporation paid the expenses. Once Cris raised the issue after July 1994, Dan started making personal payments for the maintenance and storage of, and insurance on, the airplane. Also, Dan and Phyllis started reimbursing the Corporation for any personal long distance telephone calls made on the Clinic's equipment.

The implied finding of partial performance is supported by the evidence, so the contract is enforceable.

*2. Sufficient Evidence Supports Phyllis' Liability*

█ Appellants argue that no evidence shows Phyllis intended to be a party to the agreement. Cris himself testified that only he and Dan met to discuss the June 1994 agreement.

The 1994 draft contract specifically names Phyllis. Also, Cris argues that Phyllis acknowledged the sales agreement on several different occasions. Cris testified that, five years later, Phyllis commented that the Clinic was now half Cris'. Further, when Cris consulted Phyllis about getting another table or something for the Clinic, she responded, "Do what you want, it's your place. You don't have to tell us."

Further, Phyllis received the monthly $1,000.00 payments. Phyllis, between the years of 1994 and 2001, actively changed the designation and the method of the payments. Phyllis knowingly accepted the monthly payments and enjoyed the bene-

fits. Hence, the contract is enforceable against Phyllis.

### 3. No Evidence Supports the Corporation's Liability

■ Dan, Phyllis, and the Corporation argue that there is no evidence in the record that the Corporation acted through any of its agents to enter into any purported agreement with Cris. Cris argues that Dan and Phyllis were the only shareholders and owners of the Corporation and that the Corporation was set up by Dan. Cris in essence asserts that Dan and Phyllis effectively own the assets of the Corporation. He concludes, therefore, that Dan and Phyllis bound the Corporation to the contract.

We find no evidence that the Corporation was a party to the Contract. Had Dan or Phyllis exhibited the intent and authority to act for the Corporation in selling corporate assets, they might have bound the Corporation. But we find no evidence of authority or intent for either of them to act as an agent to bind the Corporation. The Corporation is not named in the Contract. Dan and Phyllis are named in the Contract solely in their individual capacities and with no hint of any agency status. Instead, the Corporation was uniformly ignored. No evidence supports liability by the Corporation.

We affirm Cris' judgment against Dan and Phyllis but reverse and render a judgment that Cris take nothing against the Corporation.