John ZINDA, Appellant,

v.

McCANN STREET, LTD., McCann Street General, Inc., C. Kyle Smith, G.P. Smith, III, and Cheyene Smith, Appellees.

No. 06–04–00137–CV.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 5, 2005.

Decided Nov. 9, 2005.

---

Frank Supercinski, Longview, for appellant.

Stephen R. Patterson, Merriman, Patterson, Connolly & Hughes, LLP, Longview, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

John Zinda appeals from a judgment in a jury trial. Zinda had been a limited partner in McCann Street, Ltd. (the partnership). The other limited partners were brothers and sister, C. Kyle Smith, G.P. Smith, III, (Trey) and Cheyene Smith. McCann Street General, Inc.—of which Kyle[1] and Trey were the controlling shareholders—was the corporate general partner. The partnership owned and operated a restaurant, the McCann Street Bar and Grill, which was managed by Zinda. On learning Zinda had taken substantial sums out of the business coffers for his own use, the other partners foreclosed on his partnership interest and sold that interest. Zinda sued the partnership, its general partner, and the other limited partners, individually, for excluding (or evicting) him from the business and for a number of other wrongs allegedly resulting from their actions. Zinda did not prevail at trial on any of his allegations.

In response to Zinda's suit against them, the partnership and partners, Kyle and Trey, sued Zinda for unpaid rent on the property, for failure to repay a personal note to Kyle and Trey, and for money allegedly due to Kyle on Zinda's sale of a separate piece of property.

At the close of the evidence, the trial court granted a directed verdict in favor of Cheyene. The jury found in favor of the partnership and partners, Kyle and Trey, on all of their issues. Zinda appeals and names Cheyene as an appellee, even though Zinda does not appeal the directed verdict Cheyene was granted. Therefore, "appellees" in this opinion refers to the partnership, its general partner (McCann Street General, Inc.), and the other limited partners, Kyle and Trey (the Smiths).

## Background Facts

The evidence shows that Zinda had owned and managed the restaurant individually until 1998. It burned, and the partnership was formed which borrowed money to rebuild the restaurant. It reopened in 2000. Zinda leased the building from the partnership for twenty years at $7,500.00 per month.

Zinda continued as the manager and paid rent (the $7,500.00 each month) to the partnership, while taking his salary from the business income. By August 2001, Zinda was two months behind on rent and went to the Smiths asking for help because of stock market problems emanating from his options trading. The Smiths personally loaned Zinda over $33,000.00, interest free, so he could pay the back rent and $17,000.00 in delinquent sales taxes. Zinda made two payments on that loan, but none thereafter. As collateral for that note, he pledged his partnership interest in the partnership.

The Smiths later learned that, at the same time Zinda obtained the loan from them, he had deposited $54,000.00 into his options trading account. The evidence shows that, at about the same time, the Smiths encouraged Zinda to obtain help for his gambling problem, and the Smiths also suggested an increase in salary for Zinda so he could stop making draws from

---

1. First names are used to distinguish between those with a common last name.

the operating account. The Smiths also learned that Zinda had not paid the Internal Revenue Service over $75,000.00 in payroll taxes and that Zinda had used money from the payroll taxes, sales taxes, and rental funds for his personal benefit. There was also evidence he had written checks to McCann entities, but then endorsed the checks and deposited them in his personal account.

The Smiths and the partnership officially notified Zinda January 28, 2002, that he was delinquent on his note and a month and a half behind on his rent. Although he did thereafter make partial payments, he did not bring the rent current. The Smiths were added as signatories to the operating account, and they then paid the suppliers as Zinda brought the invoices to them and, when money was available, made partial payments of rent from that account. In March 2002, the Texas Comptroller froze the operating account because of another delinquency, this time of over $23,000.00, in unpaid sales taxes. At that point, it became clear Zinda had been taking money from that account for his own use. By April 2, Zinda accumulated enough funds to pay the levied amount.

The Smiths evidently began to discuss with Zinda acquiring a fifty-one percent interest in the partnership until payments for the building were complete. While negotiating that matter, they discovered that Zinda again owed over $60,000.00 in unpaid payroll taxes, that he had used that money himself, and that checks written on the alcoholic beverage replacement account were bouncing because Zinda had been skimming from that account. On April 10, the Smiths began the process of foreclosure. The evidence shows that Zinda arrived while the locks were being changed and that Zinda and the Smiths, at that point, discussed options that might keep the restaurant open. The Smiths proposed Zinda turn over operation of the restaurant, but continue as a host with a salary of $4,500.00 per month. The outstanding bills of suppliers were to be paid by the Smiths up to a maximum of $27,000.00, but with the amount of those bills to be taken off the back end of what was owed Zinda in salary. Zinda agreed to this arrangement and urged Fritz Kirl, the restaurant's long-time assistant manager, and his wife, Barbie, a waitress, to stay with the operation. There is evidence Zinda apologized to the Kirls for "it happening," which he attributed to his gambling and options trading.

Zinda remained as host of the restaurant for a few weeks, but when the Smiths received the alcoholic beverage replacement statement, it showed that, on April 10, Zinda had withdrawn another $2,500.00. According to the appellees, this was "the final straw."

The case was tried to a jury. At the close of Zinda's case, the court directed a verdict against Zinda's claims for defamation, intentional interference with contracts between Zinda and his employees and suppliers, and that Zinda take nothing on his claim for malice. At the close of all evidence, the jury found (on the counterclaims) that the partnership was due $15,675.00 for past-due rentals and late charges under the lease, that Kyle was due $18,000.00 on the sale of the "Bless Your Heart" property, and that the Smiths were entitled to $29,377.78 for the balance of a $33,050.00 note. The trial court granted judgment pursuant to the jury's verdict and ordered the Smiths' security interest in Zinda's limited partnership interest be foreclosed.

### Directed Verdict and Denial of Judgment Notwithstanding the Verdict

Zinda raises a series of arguments based on his contention the court erred by granting a directed verdict and by failing to

grant a judgment notwithstanding the verdict on his allegations of (1) wrongful eviction; (2) breach of the covenant of quiet enjoyment; (3) breach of fiduciary duty; (4) conversion of the lease and his personal property; and (5) tortious interference with contract.

1. *Wrongful eviction/breach of the covenant of quiet enjoyment*

■■■ We first address Zinda's contentions concerning wrongful eviction and breach of the covenant of quiet enjoyment.[2] Zinda contends the court erred by failing to submit an issue to the jury on wrongful eviction because there was some evidence he was wrongfully evicted. His follow-up argument is that he proved, as a matter of law, he was wrongfully evicted and that the court thus also erred by overruling his motions for instructed verdict and judgment notwithstanding the verdict.[3]

■■■ Rule 277 requires a trial court to submit instructions and definitions to the jury as are necessary to enable the jury to render a verdict. *See* TEX.R. CIV. P. 277; *Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex. 1992). The complaining party must establish that the error amounts to such a denial of rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. TEX.R.APP. P. 44.1; *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986); *Autry v. Dearman,* 933 S.W.2d 182, 188 (Tex.App.-Houston [14th Dist.] 1996, writ denied). A judgment must be reversed when a party is denied proper submission of a valid theory of recovery or a vital defensive issue raised by the pleadings and evidence, if timely raised and properly requested as part of the charge. *Exxon Corp. v. Perez,* 842 S.W.2d 629, 631 (Tex.1992); *Mayes v. Stewart,* 11 S.W.3d 440, 455 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). The test is whether the request was reasonably necessary to enable a jury to render a proper verdict. However, if a court's charge fairly and fully presents all controlling questions, it is not error to refuse to submit additional instructions that are mere shades or variations of the questions submitted. *Carr v. Weiss,* 984 S.W.2d 753, 766 (Tex.App.-Amarillo 1999, pet. denied).

■■■ Even assuming there was some evidence Zinda's eviction was wrongful, we recognize the jury charge in this case contained a question asking whether the partnership had failed to comply with the terms of the lease. The jury found the partnership did not fail to comply. This necessarily covers the issue of whether Zinda was wrongfully evicted pursuant to the terms of the lease: if Zinda did not prove the partnership failed to comply with the terms of the lease, then Zinda did not prove the eviction was wrongful. The court therefore did not err by failing to submit the requested questions.

■■■ We now turn to Zinda's contention the court should have rendered judgment

---

2. There is no separate argument on the covenant of quiet enjoyment; thus, it is treated along with the eviction issue.

3. Zinda also contends the court erred by denying his motion seeking summary judgment on those grounds. This issue is not properly before us. In general, an order granting a summary judgment may be appealed, but an order denying a summary judgment may not.

*Humphreys v. Caldwell,* 888 S.W.2d 469, 470 (Tex.1994); *Novak v. Stevens,* 596 S.W.2d 848, 849 (Tex.1980). An exception to the rule prohibiting appeal when a motion for summary judgment has been denied exists when both parties file motions for summary judgment and the court grants one and overrules the other. *Tobin v. Garcia,* 159 Tex. 58, 316 S.W.2d 396, 400 (1958).

notwithstanding the verdict on this issue. Judgment without or against a jury verdict is proper at any course of the proceedings only when the law does not allow reasonable jurors to decide otherwise. Accordingly, the test for legal sufficiency is the same for directed verdicts and judgments notwithstanding the verdict. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex.2005). Under either scope of review, we view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id.* at 807.

■ Zinda argues he conclusively proved the eviction was wrongful—focusing on an alleged failure to provide ten days' written notice as called for by the lease after he became delinquent in rental payments. However, the jury had evidence before it that notice was presented January 28, 2002, that the actual lockout did not occur until April 10, 2002, and that Zinda did not bring his rent current during that time period. Thus, there is evidence the procedure was within the scope of the agreement, and no conclusive proof to the contrary.

■ Zinda alternatively contends the partnership did not comply with TEX. PROP. CODE ANN. § 93.002(f) (Vernon 1995) because it did not put a written notice on the restaurant's front door stating where Zinda could obtain a new key, and that this constitutes a breach, as a matter of law, that would prevent the partnership from executing the eviction under the terms of the agreement. The evidence does show that no notice was posted on the restaurant's front door. Zinda testified, however, that he already had all the information such a notice would have provided. There is evidence that Zinda was present when the locks were being changed and that he and the Smiths had a meeting immediately

thereafter to consider their options. Thus, unlike the absentee landlord situation that would be remedied by the posting of a formal notice on the door, there is no evidence Zinda was harmed by the failure to so post a notice where all parties were fully involved in the proceedings leading up to the changing of the locks.

### 2. *Breach of fiduciary duty*

Zinda also contends the evidence establishes breach of fiduciary duties to him by the appellees as a matter of law. Zinda argues it was a breach for the partnership representatives, the Smiths, to evict him, and for them to contact the Kirls to find out if they would continue to work there if Zinda was gone. Zinda also argues that, because the partnership took over the books before eviction, *it* had the duty to pay rent first from gross income and thus avoid his ultimate eviction—and that failing to do so was a breach of the partnership's fiduciary duty to him. Zinda therefore contends the other limited partners breached that duty by failing to be fully candid with him and failing to disclose their intention to take over the business, by engaging in self-dealing by contacting the "key" employees (the Kirls), and by not generally behaving in a manner that put his interests first.

■ Fiduciary duties arise as a matter of law in certain formal relationships, including attorney-client, partnership, and trustee relationships. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex.1998). The relationship among the various parties was a partnership; thus, the appellees owed fiduciary duties to Zinda.

■ Partners have a duty to one another to make full disclosure of all matters affecting the partnership and to account for all partnership profits and property. TEX.REV.CIV. STAT. ANN. art. 6132b–4.04

(Vernon Supp.2005); *Bohatch v. Butler & Binion*, 905 S.W.2d 597, 602 (Tex.App.-Houston [14th Dist.] 1995), *aff'd*, 977 S.W.2d 543 (Tex.1998). Partners owe one another a fiduciary duty, including a strict duty of good faith and candor. *Brosseau v. Ranzau*, 81 S.W.3d 381, 394 (Tex.App.-Beaumont 2002, pet. denied).

 There is evidence the appellees had intended Zinda remain as the manager of the restaurant. There is also evidence that the Smiths made an interest-free loan to help Zinda catch up on rent and on unpaid sales taxes, that they encouraged him to stop gambling and seek help, and that they only ensured he was unable to make draws from the operating accounts after repeated problems involving the use of funds from that account for other purposes. The evidence shows that the appellees ensured that operating expenses (suppliers' invoices) were paid from that account. The evidence also shows that, despite having sent a notice to Zinda, the appellees did not finally evict Zinda until they became aware that, in March 2002, the State Comptroller had levied on the business due to nonpayment of taxes, and that Zinda had been using sales tax receipts for other purposes. The appellees also learned of Zinda's second payroll tax deficiency with the Internal Revenue Service and about Zinda's withdrawals from the restaurant's alcoholic beverage replacement account.

Zinda focuses his argument on what he terms as the appellees' failure to clearly inform him of their intent to take his business, and that, up until the moment they locked him out of the restaurant, they did not deal honestly with him when they told him they were still working with him.

There is evidence the appellees warned Zinda of the consequences of his conduct well before they acted to remove him from the partnership. Zinda argues that their actions thereafter diluted that intent to the point he did not realize he was actually in danger of eviction. However, the jury had all the evidence, and we cannot say that its conclusion the appellees had not violated their fiduciary duties is without support. The evidence does show that the appellees attempted to keep the partnership with Zinda viable for some time, but also that they finally reached the end of their willingness to find ways to work past major problems. A responsibility to act as a fiduciary is not equivalent to a responsibility to forgive and attempt to assist a recalcitrant partner forever, but instead to treat him or her with utmost fairness. The jury could have concluded from this evidence the appellees had adequately executed their duties. There is evidence to support the verdict, and there is not conclusive evidence to the contrary. The contention of error is overruled.

3. *Conversion of the lease and Zinda's personal property*

Zinda next contends he conclusively proved that the result of the wrongful eviction was the unlawful conversion of his property. As discussed above, there is evidence the eviction was not wrongful. In that instance, Zinda's argument has no foundation and is overruled.

4. *Tortious interference with contract*

 Zinda next contends the appellees took actions that constituted tortious interference with his contracts—notes with the White Oak State Bank and the Longview Bank and Trust—that were related to the purchase of items used in the restaurant. The argument appears to be that the interference occurred when the partnership did not use proceeds from the restaurant to pay those notes. The argument is not well developed, and there is no reference to any particular acts or any citation to the record that might be pursued to determine the

object of this contention. We assume it is directed at the jury's answer of "No" to questions 5 and 7, in which it was asked whether the appellees had intentionally interfered with a contract between Zinda and the respective banks.

There is evidence the available funds were used to keep the restaurant in operation. Keeping the restaurant afloat by paying the businesses that provided its products is necessary and appropriate. Counsel has directed us to no evidence to show this was done with intent to interfere with Zinda's notes. There is evidence of other, proper, purposes for the appellees' behavior. The contention has not been shown to have merit. It is overruled.

**Failure To Recover Damages and Attorney's Fees**

Zinda next raises several contentions involving proof of his damages, the correct amounts thereof, and attorney's fees he should be able to recover because of his successful presentation of the case on appeal. Based on our resolution of the issues above, we need not address these contentions.

**Appellees' Counterclaims**

1. *Past-due rentals and late charges*

Zinda contends a jury finding that he owes $15,675.00 in past-due rentals and late charges is not supported by sufficient evidence. The argument, however, relies on his position the appellees had failed to comply with their fiduciary duties—by paying suppliers' bills before paying on Zinda's rent out of the income stream of the business. Because of our resolution of those issues against Zinda, we also need not address this argument.

2. *"Bless Your Heart" property*

Zinda contends the jury's answers to questions finding that Zinda had agreed to pay Kyle ten percent of the gross revenue received from the sale of a separate "Bless Your Heart" property is unsupported by the evidence. Zinda bases this contention on his position that, because a stock exchange between Kyle and himself provided the consideration for the ten percent, and because only oral evidence of this stock exchange was introduced, the statute of frauds precludes recovery. Zinda's contention appears to be that, because, at the time of the oral agreement, there was no time for performance (i.e., to sell the realty), the oral agreement is unenforceable. He relies on our opinion in *Wiley v. Bertelsen*, 770 S.W.2d 878, 882–83 (Tex.App.-Texarkana 1989, no writ), as authority for his position.

In *Wiley*, we were faced with an argument by a ranch manager that "there was an oral contract between him and his employers which provided that he was to receive one third of the proceeds from the ranch and cattle, less their purchase price, when they were sold." *Id.* at 880. Several arguments were raised, including the statute of frauds and the question of the enforceability of an oral contract. We recognized, however, that the statute of frauds does not apply to an agreement to pay a certain sum of money out of the proceeds of a future sale of land. *Id.* at 881 (citing *Berne v. Keith*, 361 S.W.2d 592 (Tex.Civ. App.-Houston 1962, writ ref'd n.r.e.)).

The only remaining question raised by Zinda concerning the statute of frauds is whether the alleged oral agreement was "an agreement which is not to be performed within one year from the date of making the agreement." TEX. BUS. & COM.CODE ANN. § 26.01 (Vernon Supp.2005) provides, in pertinent part, the following:

(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is

(1) in writing; and

(2) signed by the person to be charged....

(b) Subsection (a) of this section applies to:

. . . .

(6) an agreement which is not to be performed within one year from the date of making the agreement;....

In *Wiley*, the ranch manager argued he was required to work for ten years before the contract became performable. This had the effect of making the oral agreement unenforceable because it was not to be performed within one year from the date of the agreement. That does not apply to this case. The evidence indicates the payment was to be made on the sale of the property, which could have occurred within one year or after a longer time period.

■■■■ Further, we have recently recognized that partial performance is an exception to the statute of frauds. *Bookout v. Bookout*, 165 S.W.3d 904, 907 (Tex.App.-Texarkana 2005, no pet.); *see also Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex.App.-Dallas 2002, pet. denied). The partial performance must be "unequivocally referable to the agreement and corroborative of the fact that a contract actually was made." *Bookout*, 165 S.W.3d at 907; *Exxon Corp.*, 82 S.W.3d at 439. Actions relied on to establish the partial performance exception to the statute of frauds must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced; otherwise, they do not tend to prove the existence of the parol agreement relied on by the plaintiff. *Bookout*, 165 S.W.3d at 907–08; *Exxon Corp.*, 82 S.W.3d at 439–40.

■■■■ In this case, as in our recent opinion in *Bookout*, an issue on partial performance was not presented to the jury.

As we recognized there, generally, the party claiming an exception to the statute of frauds must secure a finding to that effect. *Barbouti v. Munden*, 866 S.W.2d 288, 295 (Tex.App.-Houston [14th Dist.] 1993, writ denied). Its absence would be fatal to an appellee's counterclaim unless a finding on partial performance is otherwise implied by law. We reasoned in *Bookout* that, because the statute of frauds had been triggered and would bar recovery unless the plaintiff established partial performance of the contract, partial performance was a condition precedent to, and therefore was functionally an element of, the breach of contract ground of recovery.

As in *Bookout*, the question of sufficiency of evidence to support an implied finding of partial performance is before this Court. The evidence is relatively straightforward in that respect. Kyle testified he had exchanged stock with Zinda in return for the ten percent interest in income from the "Bless Your Heart" property, and for ten percent of any sale of that property. That evidence is not controverted and clearly shows a partial performance of the agreement. The implied finding of partial performance is supported by the evidence, so the contract is enforceable.

3. *Foreclosure*

Zinda contends the foreclosure judgment on his partnership interest is a nullity that must be set aside. His contention is based on the underlying argument that, rather than selling the restaurant property, the partnership should have wound up the partnership's affairs. That matter does not appear to have been raised at trial, other than possibly in an objection Zinda made to the admission into evidence of a copy of the deed of trust covering the restaurant property. In his last amended answer, Zinda pled that "[a] deed of trust does not give a valid lien on a personal property partnership interest," and he now

attempts to apply that language in his appellate arguments.

It appears Zinda is arguing that the vehicle of foreclosure was not the right one to use. However, he fails to specify why this is true, other than arguing that a deed of trust from him to the partnership cannot be used to authorize sale of the property by the partnership. But, Zinda also states the partnership owns all tangible partnership property.

The judgment is in the nature of an order of accounting. It foreclosed the Smiths' security interest in Zinda's limited partnership interest, and the order directed the seizure and sale of any available collateral. This is in accordance with the terms of the "Deed of Trust, Security Agreement & Financing Statement," whereby Zinda gave to the Smiths a deed of trust to his 18.92% interest in the partnership to secure all his indebtedness to them. Although Zinda suggests the foreclosure was of the real estate, that is not precisely correct—it was of his interest in the partnership.

When read in that light, Zinda's argument is not persuasive because the document partially entitled as the "Deed of Trust" is actually much more than a real property device in this instance.

## Improper Evidence

■ Zinda next contends evidence was erroneously admitted at trial. He does not specify which evidence, but states, "Their counsel emphasizes the poisonous matters in his closing argument." He argues that the "poisonous" evidence necessarily resulted in an improper judgment. It appears Zinda is referring to evidence of his gambling, options trading, and misuse of money from the sales tax and payroll tax accounts. He suggests that, because his motion in limine was overruled, his contention is properly before us. That evidence, however, was initially brought out in his own testimony on direct examination by his own counsel.

■ Because a trial court's ruling on a motion in limine preserves nothing for review, a party must object at trial when the testimony is offered in order to preserve error for appellate review. *Hartford Accident & Indem. Co. v. McCardell,* 369 S.W.2d 331, 335 (Tex.1963); *Greenberg Traurig of New York, P.C. v. Moody,* 161 S.W.3d 56, 91 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

In this case, Zinda did not object to the admission of the evidence at trial and, in fact, propounded it himself. The claim of error has not been preserved for appellate review.

## Simulated Transaction Instruction

■ Zinda contends the court erred by failing to charge the jury on the concept of a sham transaction. He contends this is the type of transaction in which the partnership engaged by first paying vendors instead of paying rent. In his trial amendment, Zinda alleged that the "simulated transactions" of the defendants nullified and voided his lockout and eviction by them.

After examining the mass filing of proposed jury questions and instructions, it does not appear Zinda requested a question or instruction on that topic. Thus, the failure to submit such a question is not error. TEX.R. CIV. P. 278.

## Commercial Bribery and Theft

■ Zinda also contends the court erred by failing to charge the jury on the questions of commercial bribery and theft. Rule 278 of the Rules of Procedure requires the court to submit questions raised "by the written pleadings and the evidence." TEX.R. CIV. P. 278. As pointed out by the appellees, the issues of commer-

cial bribery and theft were not pled. Thus, no error is shown.[4]

## Malice and Exemplary Damages

The malice issue was pled and a draft question was provided by Zinda. The court declined to submit the issue and had, in fact, rendered a directed verdict against Zinda on that issue. Zinda contends this was error because there was some evidence of malice. In support, Zinda focuses on the discussions the appellees had with key restaurant employees before the lockout, the lockout itself, and Zinda's perception that the appellees deceived him by telling him, right up to the moment they locked him out, that they were trying to help him.

Under current law, "malice" is defined as "a specific intent by the defendant to cause substantial injury or harm to the claimant." TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(7) (Vernon Supp.2005); *Clayton v. Wisener*, —— S.W.3d ——, ——, No. 12–03–00251–CV, 2005 WL 1404992, at *5, 2005 Tex.App. LEXIS 4543, at *26 (Tex. App.-Tyler June 15, 2005, no pet. h.). Even under the most liberal construction of this evidence, it does not show "a specific intent to cause substantial injury or harm." Under a directed verdict review, we look to see if there is some evidence to the contrary. In this case, we find none. Thus, the court's granting of a directed verdict on the issue of malice was proper.

 Further, the issue of malice is pertinent to Zinda's attempt to recover exemplary damages. The jury determined Zinda was not due any actual damages. Therefore, exemplary damages were not available, and even if error existed, it would necessarily be harmless. *See* TEX.

CIV. PRAC. & REM.CODE ANN. § 41.004(a) (Vernon Supp.2005).

## Summary and Conclusion

In summary, the trial court did not commit error in its granting of directed verdict or in its denial of Zinda's motion for judgment notwithstanding the verdict; Zinda was not entitled to the recovery of damages or attorney's fees; judgment on the appellees' counterclaims was proper; evidence of Zinda's gambling, options trading, and misuse of money was proper; and no error is shown in the trial court's failure to charge the jury on simulated transactions, commercial bribery, theft, or malice.

For these reasons, we affirm the judgment.

---

4. We point out that conversion was pled, and the jury decided against Zinda on that issue.

*See Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex.2002).