Opinion issued June 29, 2006 















In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00913-CV

__________


(CORPORATE PARK WEST) HARTMAN REIT OPERATING
PARTNERSHIP, II, L.P., Appellant


V.


WALLER COUNTY APPRAISAL DISTRICT, Appellee






On Appeal from the 215th District Court

Harris County, Texas

Trial Court Cause No. 2003-47095






MEMORANDUM OPINION

 Appellant, (Corporate Park West) Hartman REIT Operating Partnership, II,
L.P. ("Hartman"), challenges the trial court's judgment, rendered after a jury verdict,
in favor of appellee, Waller County Appraisal District ("WCAD"), finding that the
appraised value of Hartman's property, as of January 1, 2003, was $8,100,000. In
two issues, Hartman contends that the evidence is legally and factually insufficient
to support the jury's determination of value and that the trial court erroneously
admitted into evidence the sales price of Hartman's property. 

 We affirm. 

Factual and Procedural Background


 Hartman, the owner of "Corporate Park West," an office warehouse property
located in Katy, Texas, filed suit against WCAD, asserting that the Waller County
Appraisal Review Board assessed a value on Corporate Park West, as of January 1,
2003, that was "grossly in excess of its actual fair market value" and that WCAD
appraised Corporate Park West "in a manner and amount which [was] not uniform
and equal." After Hartman filed a non-suit of its excessive market value claim, the
unequal appraisement claim was submitted to a jury. In its charge, the trial court
instructed the jury that equal and uniform value is "the median appraised value of a
reasonable number of comparable properties appropriately adjusted." It then asked
the jury, "What amount do you find to be the equal and uniform value of the property
commonly known as Corporate Park West as of January 1, 2003?" The jury answered
$8,100,000, and the trial court entered judgment on the jury's verdict.

Standard of Review When a party with the burden of proof challenges the legal sufficiency of the
evidence, it must demonstrate on appeal that the evidence conclusively established
all vital facts in support of the issue. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241
(Tex. 2001); Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989); City of
Pasadena v. Gennedy, 125 S.W.3d 687, 692 (Tex. App.--Houston [1st Dist.] 2003,
pet. denied). In conducting our legal sufficiency review, we first examine the record
for evidence that supports the challenged finding, ignoring the evidence to the
contrary. Francis, 46 S.W.3d at 241. If no evidence exists to support the finding, we
then examine the entire record to determine if the contrary proposition is established
as a matter of law, and we will sustain the point of error only if the contrary
proposition was conclusively established. Id.

 When a party with the burden of proof attacks the factual sufficiency of the
evidence, it must demonstrate that the adverse finding is against the great weight and
preponderance of the evidence. Francis, 46 S.W.3d at 242. In conducting our factual
sufficiency review, we must consider and weigh all of the evidence, and may set aside
a verdict only if the evidence is so weak or if the finding is so against the great weight
and preponderance of the evidence that it is clearly wrong and unjust. Id.


Equal and Uniform Value

 In its first issue, Hartman argues that the evidence is legally and factually
insufficient to support the jury's value determination of Corporate Park West because 
WCAD did not make "appropriate adjustments" in determining the median appraised
value of a reasonable number of comparable properties as required by former section
42.26(d) of the Texas Tax Code. See Act of June 1, 1997, 75th Leg., R.S., ch. 1039,
§ 42, 1997 Tex. Gen. Laws 3897, 3917 (amended 2003) (current version at Tex. Tax
Code Ann. § 42.26(a)(3) (Vernon Supp. 2005)). It asserts that WCAD improperly
used an income approach in its equal and uniform analysis, effectively conducting a
"market analysis" on each of the comparable properties. Hartman notes that former
section 42.26(d) did not require the comparison of "actual market values" of
comparable properties.

 Former section 42.26(d) provided: 

 The district court shall grant relief on the ground that a property
is appraised unequally if the appraised value of the property exceeds the
median appraised value of a reasonable number of comparable
properties appropriately adjusted.


Id. 

 At trial, Hartman's expert and only witness, Gary Brown, testified that,
pursuant to former section 42.26(d), he was retained by Hartman to find a reasonable
number of comparable properties, analyze them, and "come up with a median
indication of value." Once he found the reasonable number of properties to use in his
analysis, he adjusted the properties "for various . . . dissimilarities or similarities to
[Corporate Park West] to make them comparable to [Corporate Park West] and to
give an indication of the median assessed value." In making adjustments, Brown
considered factors such as location, age, size, and construction type, though Brown
stated that, in light of the Corporate Park West's characteristics, some of these factors
were more significant than others in making appropriate adjustments. After making
his adjustments, Brown derived an adjusted value for the comparable properties of
$34.13 per square foot and then calculated a "median total value" of $5,812,975. 
Based on his analysis, Brown concluded that Corporate Park West was unequally
appraised and that its appraised value, which was $8,100,000 as of January 1, 2003,
exceeded the median value of the comparable properties appropriately adjusted for
the tax year 2003. 

 Chris Barzilla, WCAD's director and only witness, testified that he also
analyzed a reasonable number of comparable properties pursuant to former section
42.26(d) to determine a median appraised value for those properties. During his
testimony, Barzilla agreed that "if you're going to compare [properties], you're going
to have to adjust them back to the subject [property] for differences such as the age,
the condition, the quality, occupancy, [and] differences in rents they get." However,
in conducting his analysis, Barzilla stated that he used an income approach, which
was based, in part, on the rental income generated by the properties. Barzilla
repeatedly contended that the income approach took all of the appropriate adjustment
factors into consideration. Barzilla presented his calculations and findings in a table,
which contained columns reflecting the year built, the building class, total appraised
value per square foot, the net operating income per square foot, and capitalization rate
for both Corporate Park West and the comparable properties. The table, which was
introduced into evidence, also showed the difference in per-square foot income
between Corporate Park West and the comparable properties and contained a column
titled "income adjustment," which Barzilla stated accounted for the appropriate
adjustments, i.e., the differences between the comparable properties and Corporate
Park West in condition, age, size, and quality of construction. Based on his analysis,
Barzilla concluded that the appraised median value per square foot of the comparable
properties would be approximately $50.09 and that, based on this figure, the total
median value of Corporate Park West was approximately $8,799,060. Barzilla further
concluded that the actual total appraised value for Corporate Park West, on January
1, 2003, which was $8,100,000, with a value of $46.11 per square foot, did not
exceed the median appraised value of a reasonable number of comparable properties
appropriately adjusted. (1)

 In support of its argument, Hartman first asserts that WCAD did not make
appropriate adjustments and that Barzilla, WCAD's expert, contended at trial that
"adjustments were not necessary." However, the record reveals that while both
Brown and Barzilla used different methods in conducting their analysis under former
section 42.26(d), both Hartman and WCAD presented evidence pursuant to this
statute concerning the "median appraised value of a reasonable number of comparable
properties appropriately adjusted." Barzilla elected to make the appropriate
adjustments by, in part, considering the rental income generated by comparable
properties, and Barzilla testified that this would necessarily account for other
differences in the location, size, age, and construction type between the comparable
properties and Corporate Park West. Barzilla also testified that in conducting his
equal and uniform analysis, he complied with former section 42.26(d) by locating a
reasonable number of comparable properties, making appropriate adjustments, and
comparing the median appraisal value of those comparable properties to the appraisal
value of Corporate Park West. See Harris County Appraisal Dist. v. (Kempwood
Plaza Ltd.) Hartman REIT Operating P'ship, L.P., 186 S.W.3d 155, 158 (Tex.
App.--Houston [1st Dist.] 2006, no pet.). 

 Hartman next refers us to section 23.0101 of the Texas Tax Code, which
provides, "In determining the market value of the property, the chief appraiser shall
consider the cost, income, and market data comparison methods of appraisal and use
the most appropriate method." See Tex. Tax Code Ann. § 23.0101 (Vernon 2001). 
It also cites section 23.012, which sets forth the requirements for conducting an
"income method of appraisal" to determine the market value of the property. See
Tex. Tax Code Ann. § 23.012 (Vernon Supp. 2005). Hartman argues that, in light
of these provisions, former section 42.26(d) "does not require comparison of
appraised values to actual market values" and, by using an income approach, WCAD
impermissibly relied upon market value figures in performing its equal and uniform
analysis. It concludes that WCAD improperly merged the analysis under former
section 42.26(d) with a market value approach. 

 However, former section 42.26(d) did not require that the appropriate
adjustments be made exclusively using the methods suggested by Hartman or that the
appropriate adjustments may be made by considering only information contained in
the tax rolls or on WCAD's website. It is true that former section 42.26(d) was added
in 1997 as part of the Taxpayer's Bill of Rights, which "was intended to facilitate tax
remedies for property owners." See Harris County Appraisal Dist. v. United
Investors Realty Trust, 47 S.W.3d 648, 652 (Tex. App.--Houston [14th Dist.] 2001,
pet. denied). But Hartman does not explain why WCAD could not make appropriate
adjustments using the information relied upon by Barzilla. Rather, it merely argues
that such information was not available to it on the tax rolls or on the appraisal
district's website. In response, WCAD notes that most of the information used by
Barzilla in his analysis was likely available to the public before litigation, upon a
proper request, and that the information was certainly available through the discovery
process after the commencement of litigation. 

 We conclude that former section 42.26(d) did not foreclose, as a matter of law,
WCAD from considering the information used by Barzilla in determining that the
appraised value of Corporate Park West did not exceed the median appraised value
of a reasonable number of comparable properties appropriately adjusted. 
Accordingly, we hold that the jury's finding that $8,100,000 was the equal and
uniform value of Corporate Park West was supported by legally and factually
sufficient evidence. 

 We overrule Hartman's first issue.


Evidence as to Sales Price

 In its second issue, Hartman contends that the trial court erroneously admitted
evidence as to the market value of Corporate Park West and that "sales price is an
indicator of market value, which is not relevant in a case addressing equity." 

 Before trial, Hartman filed a motion in limine seeking to exclude evidence that
in 2002 Corporate Park West sold for approximately $12 million. The trial court
denied Hartman's motion. During trial, WCAD referenced, without objection,
Corporate Park West's 2002 sales price during its cross-examination of Brown. 
Additionally, at the beginning of its case, WCAD introduced into evidence, without
objection, a "filing by [Hartman] with the Securities and Exchange Commission in
which [Hartman] report[ed] that Corporate Park West sold in 2002 for $12,817,830." 
It is well-settled that a trial court's ruling on a motion in limine preserves nothing for
appellate review, and a party must object at trial when the testimony is offered in
order to preserve error. Zinda v. McCann Street, Ltd., 178 S.W.3d 883, 894 (Tex.
App.--Texarkana 2005, pet. denied) (citing Hartford Accident & Indem. Co. v.
McCardell, 369 S.W.2d 331, 335 (Tex. 1963)). Thus, we hold that Hartman has
waived this issue for review.

 We overrule Hartman's second issue.


Conclusion


 We affirm the judgment of the trial court.



 Terry Jennings

 Justice


Panel consists of Justices Jennings, Hanks, and Higley.























 
1. WCAD summarizes the methodology used by Barzilla in his testimony as follows:
"Since [Corporate Park West] is income producing property, Mr. Barzilla applied
capitalization rates to the difference in income on a per-square-foot basis between
each comparable property in his study and [Corporate Park West] and added those
amounts to the appraised value of the comparable property to account for [the] same
differences in Mr. Brown's analysis. In other words, those physical characteristics
were incorporated into the income that each comparable property could generate."